# Case No. 11,213.

## PLATT v. ARCHER.

[9 Blatchf. 559; [1] 6 N. B. R. 465.]

Circuit Court, S. D. New York.　May 31, 1872.

BANKRUPTCY — JURISDICTION OF PROCEEDINGS AGAINST DISSOLVED CORPORATION — SERVICE — SUBSEQUENT DISSOLUTION BY STATE COURT — INJUNCTION AGAINST RECEIVER — PROCEEDINGS FOR THE APPOINTMENT OF TRUSTEE.

1. A banking corporation being insolvent, a receiver of its property was appointed by a state court, on the 13th of October. On that day, its cashier gave up to the receiver the keys of the bank, and became his clerk, on a salary, and, from that time, ceased to act as cashier, but was never displaced from his official relation to the corporation as cashier. On a petition in involuntary bankruptcy, filed on the 23d of December, against the corporation, in the district court, alleging the appointment of such receiver as an act of bankruptcy; an order to show cause was served on such cashier, on the 28th of December. On the 29th of December, a judgment was entered in a state court, dissolving the corporation. On the 6th of January, the corporation was adjudged bankrupt: *Held*, that the service of the order to show cause was sufficient to give the district court jurisdiction to make the adjudication.

[Cited in Re New Amsterdam Fire Ins. Co., Case No. 10,140.]

2. *Held*, also, that the district court had jurisdiction to make the adjudication, notwithstanding the dissolution of the corporation.

3. A corporation, subject to the provisions of the bankruptcy act [of 1867 (14 Stat. 517)], and which has committed an act of bankruptcy, and is in existence when the petition against it is filed, and when the proper papers are served on its proper officer, cannot oust the jurisdiction of the bankruptcy court to proceed, on the return day, to an adjudication, because a decree dissolving the corporation has been made after such service and before such return day.

4. It appearing, by the order of adjudication, that no one appeared in opposition, and that the corporation was called in open court, and came not, but made default to appear, and it not appearing that the receiver appeared and asked, as representing the corporation and its property, to be heard, by answering the petition, and was refused leave to do so, it cannot be said that the corporation, although dissolved, had no opportunity to be heard.

5. A proceeding in involuntary bankruptcy is, substantially, a proceeding in rem, especially in a case against a corporation.

6. An assignee in bankruptcy of the corporation having been appointed, he brought a suit in equity, in this court, against the state court receiver, to set aside, as in fraud of the bankruptcy act, the transfer of the property of the corporation to such state court receiver, made by the operation of the order of the state court appointing such receiver. On the filing of the bill, and on notice to such receiver, this court granted an injunction restraining him from executing the trusts of his receivership, and appointing, pending the suit, a receiver of the property transferred to him, and of its proceeds.

7. At the first meeting of the creditors under the bankruptcy, the defendant was nominated a trustee, under the 43d section of the act, and three persons were nominated a committee of the creditors, under that section. No assignee was chosen, and the meeting was finally closed, votes for an assignee having been given for another person than the defendant. The district

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

court refused to confirm the action in regard to a trustee and a committee, and appointed the plaintiff to be assignee in bankruptcy of the corporation. The defendant and two of the three persons nominated as a committee, brought a petition, in this court, for a review and reversal of the order of adjudication, and of the order refusing to confirm the nomination of a trustee and a committee, and appointing the plaintiff assignee. The petition had not yet been brought to hearing. It being suggested, that the defendant's claim of title, as trustee, and the plaintiff's claim of title, as assignee, ought not to be decided until the action of this court on such petition, it considered the points sufficiently to be able to say that it did not perceive in them any ground for refusing any relief it would otherwise grant.

8. The plaintiff was appointed receiver, on stipulating to charge no commissions on such assets of his receivership as should pass therefrom to the trust represented by the assignee of the bankrupt.

[This was an action by John H. Platt, assignee in bankruptcy of the Stuyvesant Bank, against Oliver H. P. Archer.]

### [Points for Plaintiff.

[2] [First.—The appointment of Mr. Archer as receiver of the property of the bankrupt was equivalent to an assignment, transfer and conveyance by the bankrupt to him, because

[1. It vested in him the legal title to the property of the bankrupt, as against the bankrupt. 2 Rev. St. N. Y. p. 460, §§ 67, 68, 71; Id. p. 462, §§ 36, 39, or 3 Rev. St. (5th Ed.) top p. 763, § 44, and top p. 770, §§ 78, 79. Ex parte Berry, 26 Barb. 55.

[2. The bank consented (fol. 105) to his appointment and to all its consequences.

, [Second.—The taking of the property by the defendant, by authority of the orders appointing him receiver was a taking under legal process, within the meaning of the bankruptcy act. In re Bininger [Case No. 1,420]; In re Merchants' Ins. Co. [Id. 9,441].

[Third.—The bankruptcy act, in its fourteenth, thirty-fifth, thirty-ninth sections, purports to operate upon not only assignments, conveyances and transfers, but upon legal process issued out of state courts; and in and by those sections it purports to set up a standard or standards by which the validity of such assignments, transfers, conveyances, and legal processes may be measured. It operates upon such acts and processes.

[1. By declaring, in section fourteen, that property conveyed in fraud of creditors vests in the assignee.

[2. By enacting, in section thirty-five, that conveyances, attachments, sequestrations, seizures, payments, sales, pledges, assignments, transfers and conveyances of a specified description, or made with a specified intent, shall be void, and by providing for the recovery of the property affected thereby, and the transfer of such property to the bankruptcy court, for administration.

[3. By furnishing, in section thirty-five, a

[2] [From 6 N. B. R. 465.]

rule of evidence by which, prima facie, the bona fides of a sale, judgment, transfer or conveyance, is to be tested.

[4. By prescribing, in section thirty-nine, tests of the validity of such payments, conveyances, sales, assignments, transfers and conveyances as are there described, and giving the assignee a right of action for the property affected thereby.

[Fourth.—The bankrupt act not only professes to act upon certain transfers of property, and upon certain legal processes, by subjecting them to certain tests of their validity, but also furnishes, in section two, tribunals, viz.: this court and others, to apply those tests in cases where any party, under color of legal process, or of a sale, transfer, or assignment, claims an interest adverse to the assignee, touching any property or rights of property of the bankrupt, transferable to or vested in the assignee. This jurisdiction was exercised against a receiver in Smith v. Buchanan [Case No. 13,016]. And the cases in which like jurisdiction has been exercised are collected in an opinion of Hillyer, J. (In re Mallory [Id. 8,991]).

[Fifth.—This court having, therefore, jurisdiction to apply to the legal process, assignment, transfer, conveyance and sale—under which the defendant claims an interest adverse to the assignee touching the property and rights of property of the bankrupt—the tests prescribed by the bankrupt law, the question is, do such legal processes, &c., retain their vitality and validity as against the assignee, when subjected to those tests?

[The tests are applied by the inquiry:

[1. Under section fourteen, whether these processes were in fraud of creditors?

[2. Under section thirty-five, whether they were made to or in favor of a person having reasonable cause to believe the bankrupt to be insolvent or acting in contemplation of insolvency; or to a person having reasonable cause to believe that they were made with a view to prevent the bankrupt's property from coming to its assignee in bankruptcy, or to prevent the same from being distributed under the act, or to defeat, &c., the object of the act; and whether they were made in the usual and ordinary course of business of the debtor?

[3. Under section thirty-nine, whether they were made with intent to delay, defraud or hinder creditors or to defeat or delay the operation of the act?

[Sixth.—The assignment, transfer and conveyance effected by operation of law in this case to the defendant, vested the property of the bankrupt in the plaintiff upon his appointment, under section fourteen of the bankrupt act, because such property was thereby conveyed in fraud of creditors, within the meaning of that section. Such assignment, transfer, and conveyance are said to have been made under, and the legal process through the medium of which the convey-ance was effected, are alleged by the defendant and his advisers to have been authorised by the general law of the state of New York relative to insolvent corporations. Those laws are above referred to; and they, together with continued usage and judicial decisions, constituted, at the time of the passage of the bankrupt law, a partial system of bankruptcy or insolvency as to corporations; that is, they fulfilled so much of the office of a bankrupt law as concerns the distribution of the property of an insolvent corporation. This system gave the body of the creditors no choice in the selection of a person to execute the trust, but authorised one creditor or the attorney general to force a trustee upon creditors. The bankrupt act has, within the state of New York, the same operation and effect as if it had been enacted by the legislature of that state. It is in pari materia with the statutes last referred to, and may be treated and applied as if it were a state law. As such, it has additional weight as a supersedeas of former legislation, from the fact that the legislature passed it with the design (avowed in its title) of making the bankrupt system of New York uniform with the bankrupt system of every other state, the same law being enacted in every other state.

[The question then arising is, how does the bankrupt law of March second, eighteen hundred and sixty-seven, considered as a law of paramount authority in the state of New York, act upon the assignment impliedly sanctioned and expressly regulated by pre-existing statutes of the same state, the new statute being passed with a view not only to distribute the debtor's property, but to harmonise the insolvent laws of New York with those of other states? Referring to the words of the bankrupt law, as above quoted, it is probable, if not indisputable, that if any of those words, or similar words, had been used in like statutes in this and other countries, and if so used, they had received a well considered construction, then, when the words were re-enacted, the established construction was enacted with them. In England, some form of bankrupt law has been in force since before the time of James I. All the bankrupt acts there passed have provided in substance, that "fraudulent conveyances" should be deemed acts of bankruptcy, and that such conveyances might be set aside as against the assignee in bankruptcy. Of course, the question soon arose as to what was a fraudulent conveyance within the meaning of those laws; and in determining that question it was held that the term "fraudulent conveyance" (which is synonymous with "conveyance in fraud of creditors," as used in section fourteen of our present bankrupt law; and with "assignment with intent," &c., as used in section thirty-nine) refers not only to conveyances which were covinous and fraudulent at common law and under the statutes of Elizabeth, but

also to those which, although not fraudulent and covinous in that sense, become so, when compared with the operation and effect of the bankrupt law. In other words, a conveyance not fraudulent before, might become so under the bankrupt law, because contrary to the policy of that law.

[Assignments of all a trader's effects, under certain circumstances, were held contrary to the policy, spirit, operation and effect of the bankrupt law, and out of the ordinary course of business, and therefore fraudulent. And there was no exception in cases where the assignment was for the benefit of all the creditors of the assignor. Griff. & T. Archb. Bankr. 119; Wilson v. Day, 2 Burrows, 830; Worseley v. De Mattos, 1 Burrows, 467; Alderson v. Temple, 4 Burrows, 2235; Linton v. Bartlet, 3 Wils. 47; Compton v. Bedford, 1 W. Bl. 362; Law v. Skinner, 2 W. Bl. 996; Rust v. Cooper, 2 Cowp. 629; Newton v. Chantler, 7 East, 138; Hassells v. Simpson, 1 Doug. 92, note; Butcher v. Easto, Id. 296; Eckhardt v. Wilson, 8 Term R. 140; Nunn v. Wilsmore, Id. 528; Tappenden v. Burgess, 4 East, 230; Kittle v. Hammond, Cooke, Bankr. Law, 86; Hoffman v. Pitt, 5 Esp. 22; Botcherby v. Lancaster, 1 Adol. & E. 77; Siebert v. Spooner, 1 Mees. & W. 714; Bowker v. Burdekin, 11 Mees. & W. 128. And this has been so well understood in England that the bankrupt acts of George IV. of eighteen hundred and forty-nine and eighteen hundred and sixty-one, especially save voluntary assignments for the benefit of creditors from avoidance, unless proceedings in bankruptcy are commenced within a limited period afterwards; and such assignments are drawn as acts of bankruptcy; and in the costs of bankrupt proceedings allowances are made for the expense of such assignments, when drawn for that purpose. 2 Archb. Bankr. (Ed. 1869) § 68 of act; also Id. p. 1271.

[In this country we have had the bankrupt law of eighteen hundred and forty-one. Its first and second sections provided as follows: Law of eighteen hundred and forty-one (6 Stat. 441):

[Section 1. "All persons being merchants, &c., * * * shall be liable to become bankrupts * * * whenever such person * * * shall make any fraudulent conveyance, assignment," &c.

[Sec. 2. "All future payments, conveyances, &c., made by any bankrupt, in contemplation of bankruptcy for the purpose of giving a preference; and all other conveyances or transfers of property made by such bankrupt in contemplation of bankruptcy to any person or persons whatever, not being a bona fide creditor or purchaser for a valuable consideration, without notice, shall be deemed utterly void, and a fraud upon this act," &c.

[Under these sections, voluntary assignments were held void by Judges McLean, Prentiss, Ware, and Conkling, in Barton v. Tower [Case No. 1,085], Conkling, J.; Mc-

Lean v. Meline [Id. 8,890], McLean, J.; Gassett v. Morse, 21 Vt. 627, Prentiss, J.; Jones v. Sleeper [Case No. 7,496], Ware, J. In New York there was an insolvent system in force when the Case of Hurst, 7 Wend. 241, arose in eighteen hundred and thirty-one. It was there held that a disposition of property for the benefit of creditors, although otherwise untainted with fraud, and not prohibited in terms, was against the policy of the statute and in fraud of the law, and was, therefore, prohibited by necessary implication, and was void. Judge Nelson was a member of the court which decided that case. All through the cases above quoted, it was held that the motive and intention of an act was to be tested by its natural and necessary consequences, and that the actor is conclusively presumed to intend those consequences; a fundamental principle which is very strongly stated by NELSON, J., in Cunningham v. Freeborn, 11 Wend. 240. Such was, or had been, the state of the law in this country and in England, when the bankrupt law of eighteen hundred and sixty-seven was passed. It used language synonymous with what had thus been construed. If the legislature had intended to except assignments or other insolvency trusts, the exception would have been made expressly.

[In view of these authorities, it hardly admits of a doubt that the act of eighteen hundred and sixty-seven, in transferring, by section fourteen, to the assignee in bankruptcy property conveyed "in fraud of creditors," and in nullifying, by section thirty-nine, assignments made with "intent to defraud creditors," meant to include such an assignment as the one now in question, without regard to peculiar features of it arising from the state laws. There are, however, special inconsistencies between the operation of such an assignment and the operation of the bankrupt law, more glaring than those which existed under the English bankrupt laws. A review of these inconsistencies fortifies the position, that if the legislature of New York had passed the bankrupt law of eighteen hundred and sixty-seven, it would, by necessary construction, have repealed the system previously in force.

[1. Under the law of New York, the trustee is forced upon creditors by one creditor or the attorney-general. Under the act of congress, the creditors force the assignee on the debtor.

[2. Under a state law of eighteen hundred and fifty-eight (page 506, c. 314), certain rights of action, for instance, to recover property conveyed by the assignor in fraud of creditors, are given to the voluntary assignee. By the fourteenth section of the federal law, which has the same force and effect as if enacted by the state legislature, the same right of action is vested in the assignee in bankruptcy. Which shall prevail?

[3. The state law regulates the adjustment of the trustee's account in a manner varying

from that prescribed by the act of congress.

[4. The state law postpones the inventory until after choice of trustee is made. But the act of congress makes the petition and inventory simultaneous, in voluntary cases, and in involuntary cases, it makes the inventory and the choice of assignee simultaneous, so that the assignee is chosen in view of a well ascertained responsibility.

[5. The right to participate in dividends is determined under the act of congress by one set of tests; under the state law by another.

[6. The act of congress remits the administration of bankrupt estates to federal tribunals, whose peculiar duty it is to expound federal law. The state law confines such administration to local tribunals, and withdraws bankrupt estates from all administration under federal law. In re Bininger [Case No. 1,420].

[In these and other particulars the two systems conflict, and upon established principles the last enactment must prevail, not merely because it emanates from a paramount authority, but because, if both systems had the same origin, the two cannot co-exist. Van Nostrand v. Carr, 30 Md. 128; In re Reynolds, 8 R. I. 485; Com. v. O'Hara [6 Phila. 402]; Goodwin v. Sharkey, 5 Abb. Prac. (N. S.) 64; Sturgis v. Crowninshield, 4 Wheat. [17 U. S.] 122; Ogden v. Saunders, 12 Wheat. [25 U. S.] 273; Ex parte Eames [Case No. 4,237]; In re Independent Ins. Co. [Id. 7,017].

[Seventh.—Departing from section fourteen and comparing the transaction in question with the general policy and spirit of section thirty-five, and with so much of section thirty-nine as vitiates transfers and legal process made or issued with intent to hinder, delay or defraud creditors, or defeat or delay the operation of the act, the legal process in question is void as against the assignee, and the property affected by it is recoverable by him. The thirty-fifth section is not wholly borrowed from any other statute of bankruptcy, but as an enactment is in many respects original and peculiar; although apparently suggested by the language of judicial decisions. It aimed at something which was perhaps not definitely enough indicated by other parts of the enactments. It is such a section as the scope and sphere of federal legislation (designed to sweep away conflicting and hostile local arrangements, and to replace them by uniform methods) would suggest. It is devised for the sake of producing the uniformity which the remaining provisions of the act might have failed to produce. The words are consequently general and comprehensive. They are not confined to abrogating what conflicts with the details or machinery of the law, but they comprehensively remove all that obstructs, impairs, hinders, impedes, defeats, or delays the operation, effect, object or provisions of the act; so that under this section the given transaction cannot be tested without considering, not only the words of the law, but

the operation, effect and object of the transaction. And this section was enacted after the courts of England and of the United States had held the necessary effect of a voluntary assignment or transfer to be to impair, impede, hinder, delay and defeat the object of a bankrupt law. Beattie v. Gardner [Case No. 1,195]; Shawhan v. Wherritt, 7 How. [48 U. S.] 627.

[Eighth.—Tested by a close analysis of the words of section thirty-five and section thirty-nine, the legal process in question, and the transfer effected thereby, are void as against the plaintiff.

[1. The assignor or debtor must be bankrupt or insolvent, or acting in contemplation of insolvency or bankruptcy. Insolvency is defined in Re Bininger [supra]; Toof v. Martin [13 Wall. (80 U. S.) 40]. "Contemplation of insolvency" therefore needs no definition. "Contemplation of bankruptcy" was defined in Buckingham v. McLean, 13 How. [54 U. S.] 150. If the appointment of a receiver was an act of bankruptcy, the debtor joining in that act was, because he must have been, in contemplation of bankruptcy, as thus defined: for it knew that such act invited and would sustain an adjudication.

[2. As to the grantee, sections thirty-five and thirty-nine require only that he should have "reasonable cause" to believe certain things. And "reasonable cause" is defined by the supreme court of the United States in Toof v. Martin [supra].

[3. The thing which the grantee must have reasonable cause to believe is that the assignor or debtor is insolvent, or acting in contemplation of insolvency, and that the assignment is made "with a view," to prevent his property from coming to his assignee in bankruptcy, &c.

[4. "His assignee" clearly does not mean an assignee already appointed, but means an assignee thereafter to be appointed in bankruptcy. So the meaning is, that the grantee must have reason to believe that the assignment is made in such a way as necessarily to prevent the property from coming to any assignee who may thereafter be appointed. That was clearly the effect in this case.

[5. It is also enough, if the grantee has reasonable cause to believe that the assignment is made with a view of preventing the property from being distributed under the act. Certainly it could not be distributed under the act if it was distributed under some other act. In this clause the section gives importance to the machinery of the act.

[6. It is enough if the grantee has reasonable cause to believe that the assignment is made "with a view" to defeat the object of the act. The object of the act is to establish a uniform system of bankruptcy; that is, to have the property of an insolvent debtor in one state distributed in the same order and proportion, and to the same classes of creditors, and under the supervision of the

same class of tribunals and within the same period, as in all other states. But the necessary effect of the assignment was to have the property distributed in different orders and proportions, and to different classes of creditors under the supervision of different tribunals, and within different periods, from those provided in other states. Another object of the law is to open the federal courts to all creditors without distinction, and give them in those courts a remedy against the debtor's property. This assignment defeats that object by driving the creditor to a state court, unless he can go into a federal court on some peculiar ground of jurisdiction, such as alienage or citizenship in another state.

[7. It is also enough if the grantee has reasonable cause to believe that the assignment is made "with a view" to impair, hinder, or delay the "operation and effect" of the act. Here again the section raises the machinery of the act into importance, and sweeps away what obstructs its practical working. The operations of the act are manifold. Its operation on debtors is to compel them to put their property in the control of a federal court, for the purpose of being distributed among creditors who may establish their status as such by proper proof; and such distribution is effected by means of an agent selected by creditors. The assignment in question defeats that operation of the act by promoting a distribution of the property in other methods. The act operates upon creditors in many beneficial ways, which need not be pointed out in detail. In general it requires them to prove their status as creditors, and to surrender special advantages, and it gives them summary and speedy realization upon their claims. The assignment in question defeats this operation of the act, and hinders, impedes and delays it. No creditor claiming the benefit of the assignment need purge himself as he is required to do by the bankrupt law. The answer which may be suggested to this objection is that the object of the assignment in question, on its face, appears to be the equal distribution of the property among creditors; and as that is the object of the bankrupt law, the assignment is not at cross purposes with the law. This answer is more plausible than substantial. The words "operation and effect," in the law, refer to the machinery provided by the law; but even if this is not so, yet, taking the whole law together, its ultimate operation and effect is to distribute the property among those who prove themselves creditors in the federal court and submit to the conditions there exacted of them; while the ultimate operation and effect of the assignment in question is to distribute the property among those who may establish their claims in some other way. These are not concurrent, but are substantially inconsistent, trusts. Ex parte Hurst, 7 Wend. 241.

[8. "In view of" and "with intent to" produce certain specified consequences are phrases referring to a state of mind of which the law does not require proof, but which it conclusively presumes to exist, where the consequences necessarily or naturally flow from the act; and the inquiry which these words suggest is—"What consequences did naturally and necessarily flow from the act?" When these consequences are ascertained, they are conclusively imputed to design; and so conclusive is the inference of the law, that sworn denials of the inferred intent are wholly immaterial. Cunningham v. Freeborn, 11 Wend. 240; In re Bininger [Case No. 1,420]; Newman v. Cordell, 43 Barb. 448.

[9. The effect of the bankrupt law is to vest in the assignee in bankruptcy property previously conveyed in fraud of creditors. The effect of the assignment, under the law of New York, is to vest a right of action for such property in an assignee selected by one creditor or by the attorney-general. This is a vital difference of the greatest practical consequence.

[10. The effect and operation of the bankrupt law is to put the property of the debtor out of the reach of process, while giving the assignee retroactive rights, so as to equalize the distribution of the property as of a period four or six months prior to the proceedings in bankruptcy. This operation and effect is defeated by the making of a voluntary assignment, which, while changing the title to the property, does not at the same time create any agency competent to revoke preferences already carried into effect.

[11. The effect and operation of the bankrupt law is to put the property under the control of the district and circuit courts and the supreme court of the United States. The effect of the voluntary assignment is to leave it within the jurisdiction of the state courts. While there, it is subject to various hazards from which it would be free under the bankrupt law. For instance, it is subject to be swept away by prior lien. It is subject to suit brought to set aside the assignment as fraudulent, and the first suitor in any such proceeding has a preference over the rest. It is no answer to repeat the phrase—"The only object was to make an equal distribution," &c., when the effect is manifestly the contrary.

[12. It is also sufficient, if the assignee has reasonable cause to believe that the assignment was made "with a view" to evade any of the provisions of the bankrupt act. This clause says nothing about the policy, spirit, operation or effect of the law, but refers solely to its provisions, without distinction between the provisions relating to intermediate steps and those effecting final results. There are provisions of the bankrupt law which are evaded by a distribution of property under a voluntary assignment. All the provisions of the involuntary branch are so evaded. The provisions of the voluntary branch are so evaded—such as those relating

to the selection of an assignee, the proving of debts, the surrender of securities, the retroactive rights of an assignee, the compensation of an assignee, &c.

[13. It may be suggested, in answer to these points, that the voluntary branches of the law are permissive only, and not imperative, and that it is not expressly made the duty of a debtor to avail himself of that branch. So much may be safely conceded, though in fact the position is unsound. But the fact that a debtor violates no duty by not petitioning, does not give validity to a transfer which the law nullifies. It may be true that the law does not say to the debtor, "You shall petition," but it is equally true that it does say, "You shall not evade any of the provisions of this act, nor make any assignment which has the effect to prevent your property from coming to any assignee in bankruptcy hereafter appointed, or to prevent the same from being distributed under this act, or to defeat the object of, or in any way impair, impede, or delay the operation and effect of this act. If you form the wish voluntarily to distribute your property through the medium of a third person, and not directly by your own hand, it must be to such persons as bring themselves within the provisions of this uniform law, and not to such as you may designate; and in other particulars, you must subordinate your wishes to the machinery, object, effect, and provisions herein pointed out and provided." If, then, the debtor does not choose to proceed under the act, he must not proceed in conflict with it. If he is not bound to comply with its provisions, he is bound not to violate them. He must not remove his property out of the reach of process, nor yet convey in fraud of creditors, nor against the policy of the act. If these prohibitions do not create a positive duty they give rise to a necessity which the debtor must submit to.

[14. The thirty-fifth section further provides, that if such assignment is not made in the usual and ordinary course of business of the debtor, the fact shall be prima facie evidence of fraud; not of fraudulent intent solely, but of fraud intended, consummated, or directly or indirectly produced. Under the English statutes it was constantly held that a voluntary assignment was out of the ordinary course of business; so that the framers of the present bankrupt law have enacted into law what was previously a judicial definition.

[15. It may be said, also, that there is no more harm in a debtor making an assignment in trust for his creditors, than in his making the distribution himself. The answer is, that the law does not nullify the latter act, while it does the former. The framers of the law judged of the difference for themselves. The first clause of the thirty-fifth section impliedly permits payment directly to creditors, if not made by way of preference, while the second clause points to

payments and assignments to third persons not creditors, or not acting wholly in their own right as creditors. If, without design to give a preference, the debtor makes a payment directly to a creditor, there are no words in the law to avoid it. The difference between payments and securities directly to creditors, and assignments in trust for creditors, is very distinctly stated in Cunningham v. Freeborn, 11 Wend. 256; as follows: "I would hold a debtor in failing circumstances to pay, or give security to, his creditor or creditors, directly, without the intervention of a trustee, who is often the creature of the debtor, without interest or sympathy on behalf of the creditor. In this way the creditor would obtain the control of the fund the moment the debtor parted with it, and if favored creditors were preferred, they would be obliged to see to it that they took no more than was a fair security for their debts. They should not be permitted to justify their possession under the cover of trusteeship for others. Each creditor should be his own trustee. If inconvenient for creditors personally to execute the trust, they could appoint a trustee in their place. This modification would have the effect to give the possession and control of the fund, in the first instance, to the creditors, or to a person appointed by them; as the law now stands, the debtor may control the appointment, and a bill in chancery is often necessary to enable the creditor to get possession of the fund. If, in the preference, actual payment was required, or security directly to the person of the creditor or creditors, for his or their debts, and, of course, the immediate control of the property given, the great inducements to these fraudulent assignments would be removed. The hope of profit or control of the property by the debtor, after he parted with it, would be extinguished, and he could have no other interest in the preference than to see that it was made. He might still gratify unkind, or worse, feelings, against particular creditors; but he must, at the same time, deny himself the use of the fund of which he deprives them." This is the language of Nelson, J.

[Independently of the authorities above quoted, and treating the question as an original one upon the words, policy and object of the bankrupt law, the following arguments, some of which are repetitions of what has been already said, are submitted as pertinent and controlling:

[1. The bankrupt law introduced new elements into the relation of debtor and creditor, so that what was not fraudulent before may be so now.

[2. The intent is to be determined by the actual and natural effect.

[3. The fourteenth section, in using the words "in fraud of creditors," points the mind not only to what is intended to be a fraud, but to what is, per se, or consequentially, or technically, or inferentially, a withholding of

a right, duty, or advantage due to creditors, under the bankrupt law or otherwise.

[4. The reasons assigned by English and American judges in expounding the bankrupt laws which existed prior to eighteen hundred and sixty-seven are applicable now, and are convincing, if not authoritative.

[5. The debtor owes to the body of his creditors the duty of yielding them voluntarily every advantage in the distribution of his property which they could obtain by adverse proceedings; and not less than any other does he owe them the duty of yielding them every advantage which the bankrupt law furnishes. When he not only withholds such advantages, but bars the creditors' way to them, he violates a duty created by law; which is another way of saying that he commits a fraud upon the law.

[6. By making a voluntary assignment, the debtor withholds privileges, advantages and securities which, by his voluntary act under the bankrupt law, he might bestow; and so he defrauds his creditors.

[7. A voluntary assignment is a fraud upon creditors, because, by means of it the debtor is enabled, under our political system, to make a fraudulent use of the bankrupt law. He makes the assignment. That, if valid, takes the property out of the jurisdiction of the federal courts; then he may invoke the bankrupt law, and, by means of an injunction upon creditor, gets the property out of their reach in the state courts. In that view of it, if the assignment is not a fraud, the bankrupt law is.

[8. A denial of an intention to institute voluntary proceedings in bankruptcy is not an affirmation, nor is it, if true, proof of honest intent. It is only a denial of an intention to furnish to creditors the advantages which accrue to them under the bankrupt law. It is consistent with a design to defraud. For instance, a debtor pays a favored creditor in full; he knows that if he goes into bankruptcy within four months he puts that creditor in peril. Therefore, to defraud the law, he intends not to go into bankruptcy. So as to attachments and other liens. It is supposed by the plaintiff that the defendant may rely, in opposition to this motion, on Sedgwick v. Place [Case No. 12,622]; Sedgwick v. Menck [Id. 12,616]; Langley v. Perry [Id. 8,067]; Hawkins' Appeal [34 Conn. 548]; Beecher v. Bininger [Id. 1,222]. It is therefore submitted.

[9. That those authorities are not in conflict with the plaintiff's position here. In Sedgwick v. Place [supra], the case was heard on a preliminary motion founded on the bill only. Whatever fraud was averred in the bill was denied in the answer, and no proofs were offered in support of the bill. A preliminary motion for an injunction was denied by Nelson, J., solely on the assumption, as he expressly states, that the assignment then in question was untainted with fraud either against creditors or against the bankrupt law. In some respects, it is difficult to reconcile every sentence of the opinion in Sedgwick v. Place with Judge Nelson's views expressed in Cunningham v. Freeborn, 11 Wend., and Hurst's Case, 7 Wend. As matter of fact, it is true that in Sedgwick v. Place, when that case was before Nelson, J., no actual argument was had. The papers were submitted to him in the expectation and belief, on the part of counsel on both sides, that he would grant the motion. In Sedgwick v. Menck [Case No. 12,616], the assignee sought to deprive creditors of a lien which they had acquired many years before the passage of the bankrupt law. No case within either of sections fourteen, thirty-five, or thirty-nine was made. The decision in that case was clearly right, and was acquiesced in by all parties. In Langley v. Perry [supra], the assignment in question was made on May twenty-five, eighteen hundred and sixty-seven, which was before the bankrupt law took effect, and when neither the debtor nor his creditors were able to put the law in motion. Of course an intention to defeat or delay the operation of an inoperative law could not be imputed. In Farrin v. Crawford [Case No. 4,686], Swayne, J., says, "I do not mean to impute any intention to defraud or do wrong to either party, but here are the facts, and the legal result is inevitable." He thus recognizes and applies the rule adopted by Nelson, J., in Cunningham v. Freeborn. In Hawkins' Appeal [supra], no question arose between an assignee in bankruptcy and a voluntary assignee. The question was between creditors of a debtor and the voluntary assignee of the debtor. What the questions were, the report of the case does not disclose. Nor does it appear how creditors, on the settlement of the accounts of a voluntary assignee, in a state court, could avail themselves of the provisions of the bankrupt law. The case is worthy of observation, in that it erroneously states Judge Nelson's decision in Sedgwick v. Place. Judge Nelson did not dismiss the bill, he only denied a preliminary motion. See Judge Nelson's comment on Sedgwick v. Place [Case No. 12,623]. In Beecher v. Bininger [Id. 1,222], the questions now arising were not raised at all. The plaintiff in that case, Beecher, did not found his suit either on the fourteenth, thirty-fifth, or thirty-ninth section of the bankrupt law, nor did he attack the process under which the receiver took the property, as fraudulent. His theory was, that by means of the receivership, a trust had been created for the benefit of Clark & Bininger, in a suit in a state court; that the title of Clark & Bininger to, and their interest in the property had passed to the assignee, and that, therefore, the action in the state court had abated; that the receivers were functi officiis, and the assignee had a right to call upon them in this court for an account. On the

merits of that theory, the court did not pass then, and has never passed since. It only denied a motion, putting the denial on the ground that, no fraud being alleged, there was no sufficient reason shown for apprehending loss or waste. On the other hand, see In re Smith [Case No. 12,974]; 3 N. B. R. 79, letter from Judge Nelson; In re Pierce [Case No. 11,141]; In re Randall [Case No. 11,551]; In re Bininger [Case No. 1,420]; Van Nostrand v. Carr, 30 Md. 128; In re Reynolds, 8 R. I. 485; Dehon v. Foster, 4 Allen, 545.

[10. The proper method of obtaining relief against a fraudulent transfer of a bankrupt's property, or against an attempt to take the property out of this jurisdiction, is by bill in equity, fraud being the ground of jurisdiction. Particularly is this so, where a discovery and account is necessary. And the only method of determining conflicting claims of an assignee and an adverse holder of property is by a plenary suit in equity or a formal action at law. Dehon v. Foster, 4 Allen, 545; In re Kerosene Oil Co. [Case No. 7,725]; In re Bonesteel [Case No. 1,628]; In re Ballou [Case No. 818]; Smith v. Mason, 6 N. B. R. 1.

[11. The utmost which the plaintiff needs to do on this motion is to establish three propositions: (1) Color or appearance of superior title, and probability of ultimate recovery. This he has done. (2) Danger of loss or misappropriation. (3) Necessity for this court taking the property into its custody pendente lite.

[12. The defendant is a fraudulent grantee, not merely by construction, but actually so. When he became receiver, the law was too well settled to be misunderstood, that he was becoming a participant in a scheme to defraud the law. He has not only become the trustee under a fraudulent trust, but he has furnished security that he will execute that trust. The court will presume that he will execute the trust unless restrained. Hence the necessity and propriety of an injunction. Danger of loss will be presumed to exist when the property is in the hands of a fraudulent grantee pledged to devote it to unlawful purposes. The property is alleged in the bill (fols. 14, 15) to be of various descriptions, and much of it capable of easy transfer or alienation. If the defendant is permitted to transfer it pendente lite, the plaintiff may be compelled to follow it, by a variety of proceedings, in various courts, into the possession of numerous purchasers, and thus encounter the evil, so odious to a court of equity, of multiplicity of suits, and great diminution of a trust fund in legal expenses. The defendant's refusal to deliver the property, his claim of title under a fraudulent conveyance, his refusal to attorn to this court, his obtaining orders from the state court without notice to the assignee, all constitute continuing threats to misappropriate the property, and the case is brought within the principle of the cases referred in 2 Story, Eq. Jur. §§ 905–908, 918, 953, and of Onslow v. ——, 16 Ves. 173; Douglass v. Wiggins, 1 Johns. Ch. 435; Watson v. Hunter, 5 Johns. Ch. 170; Winship v. Pitts, 3 Paige, 259; Frewin v. Lewis, 4 Mylne & C. 254; Dehon v. Foster, 4 Allen, 545, 7 Allen, 57; Church of Holy Innocents v. Keech, 5 Bosw. 691; Galwey v. United States S. S. R. Co., 13 Abb. Prac. 211; Mohawk & H. R. Co. v. Artcher, 6 Paige, 88; Shaw v. Dwight, 16 Barb. 536; Gillott v. Kettle, 3 Duer, 624; McLean v. Lafayette Bank [Case No. 8,885]; Cropper v. Coburn [Id. 3,416]; Rateau v. Bernard [Id. 11,579]; McKenzie v. Cowing [Id. 8,856]; Osborn v. Bank of U. S., 9 Wheat. [22 U. S.] 738; Sawyer v. Gill [Case No. 12,399]; City Bank of New York v. Skelton [Id. 2,740]; St. Luke's Hospital v. Barclay [Id. 12,241]; Green v. Hanberry [Id. 5,759]; Wilson v. Bastable [Id. 17,789]; In re Mallory [Id. 8,991]. It is not merely the danger that if the plaintiff recovers, the property may not be forthcoming, which is to be considered, but danger in a peculiar sense suggested by the bankrupt law. The danger is, that if the fraudulent grantee is permitted to execute his trust, the creditors whom the plaintiff represents may lose the benefit of the bankrupt law. Many months must elapse before a final decree can be obtained. Meanwhile, the defendant, by ex parte applications in the supreme court, may get authority to pay out a large part of the fund for purposes not authorised by the bankrupt law. A short statute of limitations is running against the plaintiff. If he should undertake to sue parties to whom the bankrupt made prior fraudulent conveyances, he would be met by an assertion of the defendant's title. Nearly two months have now elapsed since the plaintiff was appointed. In another month his duty will be to call a meeting of creditors. If this court takes possession of the fund, it may, pendente lite, apply it to the satisfaction of undisputed claims, without injustice. Each party is a trustee, and the cestui que trust on both sides are identical, or can be made so, upon compliance with the terms of the bankrupt law. Hence the propriety of a receivership in this suit, through which the fund may, pendente lite, go directly to those ultimately entitled to it, and who are the real parties in interest. And an injunction of the kind here asked for necessarily draws after it a receivership. Osborn v. Heyer, 2 Paige, 342; Bloodgood v. Clark, 4 Paige, 574; Mitchell v. Bettman, 25 Barb. 408.

[13. The plaintiff, Mr. John H. Platt, asks that he may be appointed receiver, he stipulating to charge no commissions on what may be ultimately transferred from the receivership to the trust represented by himself as plaintiff. This is the course which has been uniformly pursued, for the sake of convenience and economy, in the

district court, in like cases. The plaintiff as assignee is always under the direct control and order of the court, and cannot dispose of the property, even on a final recovery, without leave of the court. In his hands, therefore, the property is in the safest and most economical custody. Any reasons which, in the ordinary exercise of equity jurisdiction, would be valid against the appointment of a party, are inapplicable in cases of this description. The district court acted in that way in Sedgwick v. Place [Cases Nos. 12,619 and 12,623], and the practice there adopted has been generally followed since, in like case, with the acquiescence of suitors and lawyers, wherever the parties to whom the plaintiff and defendant are accountable, are identical.] [2]

Francis N. Bangs, for plaintiff.

David Dudley Field and Dudley Field, for defendant.

Before WOODRUFF, Circuit Judge, and BLATCHFORD, District Judge.

BLATCHFORD, District Judge. On the 13th of October, 1871, the supreme court of New York, in a suit brought by William R. Barr against the Stuyvesant Bank, and on a verified complaint and sundry affidavits therein, made an order restraining the bank from exercising any of its corporate franchises, and from collecting or transferring any of its moneys or property, until the further order of the court, and appointing the defendant in this suit to be receiver of its property. Such suit was commenced on the 12th of October. The gravamen of the complaint was, that the bank was insolvent and unable to pay its debts. The bank appeared in the suit by attorney, on the 12th of October, and its counsel consented, in open court, to the making of the order of the 13th of October.

On the 13th of November, the supreme court, in a suit brought by the people of the state of New York against the bank, and on a summons, a complaint, affidavits, and due notice, counsel for the bank appearing and opposing, made an order enjoining the bank from exercising any of its corporate franchises, and from collecting or transferring any of its moneys or property, and appointing the defendant in this suit to be receiver of its property. The complaint set forth the insolvency of the bank.

On the 23d of November, no answer or demurrer having been put in, in the suit brought by Barr, a judgment was entered therein, awarding a perpetual injunction against the bank, and appointing the defendant in this suit to be its receiver, but not dissolving the corporation.

On the 23d of December, John Mack filed, in the district court of the United States for this district, a petition in involuntary bankruptcy against the bank, setting forth, as one of the acts of bankruptcy, the procuring and

[2] [From 6 N. B. R. 465.]

suffering its property to be taken on legal process by the defendant in this suit, as receiver, with intent to defeat the operation of the bankruptcy act. On the filing of the petition, an order to show cause, returnable on the 6th of January, 1872, was, on the 23d of December, issued. The order directed that a copy of the petition, and of the order, should be served on the president of the bank.

On the 27th of December, an answer of the bank, in the suit brought by the people, denying, on information and belief, its insolvency, was sworn to by John Van Orden, who, in the affidavit, says, that he "is cashier of the Stuyvesant Bank." This answer was subsequently put in in the suit.

On the 28th of December, on an affidavit of the absence of the president of the bank, and that Van Orden was cashier, an order was made by the district court, that a copy of the petition, and of the order to show cause, be served on the bank, by serving it on Van Orden, its cashier. Such service was made on Van Orden on the 28th of December.

On the 29th of December, in the suit brought by the people, judgment on the answer as frivolous was given against the bank, and it was adjudged that the charter of the bank "is declared to be forfeited, and the said corporation, composing the said bank, is hereby dissolved," and that the defendant in this suit be continued as receiver, and be appointed receiver of all the property of the bank, and that the bank be enjoined from collecting any debts, and transferring any money or property, and from transacting any business whatever.

On the 6th of January, 1872, on proof of such service of a copy of the petition and order to show cause on the cashier of the bank, no one appearing in opposition, and the bank being called in open court, and making default in appearing pursuant to the order to show cause, the usual order of adjudication was made by the district court, setting forth, that, on consideration of the proofs, it was found that the facts set forth in the petition were true, and adjudging that the bank became bankrupt, within the true intent and meaning of the bankruptcy act, before the filing of said petition, and declaring and adjudging it bankrupt accordingly, and referring it to a register to take the proceedings required by the act.

At the first meeting of the creditors of the bankrupt, held, in pursuance of the warrant issued to the marshal, for the choice of assignee, it was resolved, by three-fourths in value of the creditors whose claims had been proved, that it was for the general interest of the creditors of the bankrupt that the estate of the bankrupt should be wound up and settled, and distribution made among the creditors, by trustees, under the inspection and direction of a committee of creditors, and that the defendant in this suit be nominated as trustee, to take, hold, and distribute said estate; and that Richard Kelly, the Reverend

John Orcutt, and Richard H. Bull, president of the New York Savings Bank, be the committee of creditors, under whose direction the said trustee should act. This resolution was duly certified to the district court by the register. The register also certified, that the first meeting of creditors was convened on the 7th of February, and was finally closed on the 13th of February; that, at the meeting, votes were cast for assignee, the names of the voters, and the amounts of the debts on which they voted, and the name of the person for whom such votes were cast, being returned, and such person not being the defendant herein; that there was an opposing interest to the appointment of an assignee by the register, in the action of the creditors in nominating a trustee; that no choice of assignee was made by the creditors; and that the register had made no appointment of assignee, believing that such action of the creditors was such an opposing interest as would render his appointing one irregular and void.

On the 16th of March, the defendant in this suit, on notice and on affidavits, applied to the district court for the confirmation of the action of the creditors, in respect to a trustee and a committee. This motion was opposed on affidavits, and, by an order made on the 22d of March, the court denied the motion, and appointed the plaintiff in this suit to be assignee of the estate and effects of the bankrupt. [Case No. 13,581.] From the decision rendered by the district judge, it appears that he was of opinion, on the papers before him, that the interests of the creditors would not be promoted by the appointment of the defendant in this suit as trustee, and that, therefore, he declined to confirm such resolution. The principal ground stated for this conclusion was, that, as the appointment of the defendant in this suit as receiver by the state court was one of the grounds on which the bank was adjudged bankrupt, and he still continued to be such receiver, and claimed to hold, as such receiver, what remained in his hands of the property of the bank which had passed to him, and had been dealing with the rest as such receiver, and, if he was to account for it at all to the district court, must account for it as of the day the petition in bankruptcy was filed, and to a trustee or assignee to be appointed by the district court, and, as it appeared that he did not intend to voluntarily surrender to any trustee or assignee to be appointed by the district court, the property still in his possession, and did not intend, if confirmed as trustee by the district court, to cease acting as receiver, but announced his intention to act both as receiver and as trustee, and to have his acts authorized by the state court, and by the district court, it was not proper that he should, as trustee, be plaintiff, and, as receiver, be defendant, in respect to the matters involved, and he could not be allowed to occupy the incompatible position of being a trustee under the bankruptcy act, and looking to the state court as partly the source of his authority, or of holding the property as receiver, under the state laws, and administering it under the authority or direction of the district court. It further appears, from the decision of the district judge, that he regarded it as an objection to confirming the proceedings, that the bank of which Mr. Bull, one of the three persons named as the committee of creditors, was president, claimed, by its proof of debt, to be entitled to a preference under the statutes of New York, and to be paid in full, in priority to others, in a distribution of the assets under the bankruptcy act, and that such claim of preference was contested by creditors who were unsecured, and who claimed no preference. The view of the judge was, that the creditors had undertaken to select a committee consisting of three persons, and had thus expressed their desire that the committee should consist of three persons; that their action under the statute was a unit, and their resolution must be confirmed as a whole, or not at all; and that it was improper that Mr. Bull should be one of the committee, under whose direction the estate of the bankrupt was to be wound up and settled. The judge regarded the case as having arisen where, under section 13 of the act, it became the duty of the court to appoint an assignee, the resolution nominating a trustee not being confirmed, and no choice of an assignee having been made by the creditors.

An assignment, in due form, under the act, was executed by the district judge to the plaintiff in this suit on the 22d of March, of all the estate which the bankrupt had on the 23d of December, 1871. On the 23d of March, the defendant in this suit and Bull and Orcutt filed in this court a petition praying for a review and reversal of the order of adjudication made by the district court, and of the order refusing to confirm the nomination of a trustee and a committee, and appointing the plaintiff in this suit to be assignee. The petition of review sets forth, as objections to the orders: (1) That the district court had no jurisdiction over the bankrupt, it having been dissolved by a judgment of a competent court before the adjudication; (2) that it had no jurisdiction over the assets of the bankrupt, they having become vested in a receiver duly appointed by the state court. If it should be held that the district court had such jurisdiction, then it is objected, by the petition, to the order of the 22d of March, that it refused (1) to confirm the resolution nominating the defendant in this suit as trustee; (2) to confirm the resolution nominating the three persons as a committee; (3) to confirm at least two of the committee. If it should be held that the district court had such jurisdiction, and that it was proper for the district judge to refuse to confirm as aforesaid, then it is objected, by the petition, to the order of the 22d of March (1) that it appoints the plaintiff in this suit assignee, when less than one-tenth of all the creditors who had proved their

claims had voted for him, while more than nine-tenths had voted for the appointment of a trustee; (2) that the appointment of such assignee was not authorized by law, it having been the duty of the court to direct the bankruptcy to proceed as though no resolution had been passed, and to make all necessary orders for resuming the proceedings, and thereupon to direct that all further proceedings (if any proceedings whatever were, under the circumstances, valid) be remitted to said register, and that an election of a new trustee or an assignee thereupon take place. This petition of review has not yet been brought to hearing before this court.

On the 25th of April the plaintiff in this suit obtained an order from the state court, granting him leave to bring this suit. The bill in this suit sets out that, on the 13th of October, 1871, the Stuyvesant Bank was a corporation created by the state of New York, and was insolvent; that it was adjudged a bankrupt by the proceedings before mentioned; that, within four months before the filing of the petition against it, it, being insolvent, made a transfer of its property to the defendant, who then had reasonable cause to believe it to be insolvent, within the 35th section of the bankruptcy act, the transfer being made by means of the order made on that day in the suit brought by Barr; that the defendant had reasonable cause to believe the bank to be insolvent, and that the transfer was made in fraud of the provisions of said act, and with a view to prevent the property of the bank from coming into the possession of its assignee in bankruptcy, and to prevent it from being distributed under said act, and to defeat the object of, and impair, hinder, impede and delay, the operation and effect of, and evade the provisions of, said act; that the transfer was not made in the usual and ordinary course of business of the bank; that, on the said 13th of October, the bank, being insolvent, did, with intent, by such disposition of its property, to defeat and delay the operation of said act, and with intent to delay, defraud and hinder its creditors, transfer its property to the defendant in this suit, and procure and suffer its property to be taken by him on legal process; that such legal process consisted in the orders and judgments of the state court, before referred to; that the trust created by said legal processes, and transfer, and appointment of the defendant as receiver, was a trust created in fraud of the creditors of the bankrupt, and the property affected thereby was conveyed by the bankrupt to the defendant in fraud of its creditors, within the meaning of the 14th section of the bankruptcy act, and the transfer was void within the meaning of the 35th section, and the legal process was void within the meaning of the 39th section, and the defendant had reasonable cause to believe that a fraud on the act was intended, and that the said debtor was insolvent; that the defendant has, on demand, refused to give to the plaintiff (whose title is

set out) an account and the possession of such property, and claims a title and interest adverse to the plaintiff touching said property; that such property consisted of real, personal and mixed property; that a large proportion of it consisted of claims and choses in action against persons who were indebted to the bankrupt at the time such orders were made by the state court; and that, to reduce the same to the possession of the plaintiff by actions at law, or to compel the defendant to respond for the value of the property in actions at law, would require a large number of suits, and a discovery and an accounting by the defendant. The bill prays that said transfer may be decreed to be void as against the plaintiff, and that the said legal processes may be adjudged to be, as against the plaintiff, void, and that the property affected thereby may be adjudged to be vested in the plaintiff, and that the defendant may account for the same, and for the disposition made by him of the same, and of the proceeds thereof, and deliver to the plaintiff so much of such property as remains in his hands, and the proceeds of such of it as he shall have disposed of, and that he be enjoined from disposing of or interfering with said property, and from setting up and asserting, as against the plaintiff, any title to, or right of action for, any of said property, and that, pending this action, and by final decree, he may be enjoined from doing any act to carry out or effectuate the trusts purporting to be created by his appointment as receiver, or from distributing the property affected by such receivership, otherwise than by the permission and direction of this court, and that, pending this action, and by final decree, a receiver of the property transferred to him, or in his possession, and of its proceeds, may be appointed, with the usual powers of a receiver in like cases. The plaintiff now moves, on notice, for an injunction restraining and enjoining the defendant, pending this action, pursuant to the prayer of the bill, and also for the appointment of a receiver, pending this action, pursuant to the prayer of the bill.

It is claimed that the district court had no jurisdiction to adjudge the bank a bankrupt, because the petition and the order to show cause were not served on any one who did or could represent the bank, and that Van Orden was not, at the time of the service, the cashier of the bank. This allegation is made on the ground that, on the 13th of October, Van Orden gave up to the defendant the keys of the bank, and became his clerk, on a salary, and ceased to act as cashier, and did not act as cashier from that time prior to the judgment of dissolution. But there was nothing in this which displaced Van Orden from his official relation to the corporation as cashier, as is also apparent from his own oath on the 27th of December, that he was then cashier. The corporation was in being on the 28th of December, when the papers were served on Van Orden, and he was still its cashier for the

purpose of being served, as its proper representative, with such papers. If, at any time prior to the judgment of dissolution, the state court had discharged the receivership, and directed the property of the corporation to be restored to its officers, Van Orden would have been a proper officer, as its cashier, to receive the property, without any new appointment of him as such.

It is also objected, that the bank had no existence when the adjudication was made. But we cannot admit it to be a tenable proposition, that a corporation, subject to the provisions of the bankruptcy act, and which has committed an act of bankruptcy, and is in existence when the petition against it is filed, and when the proper papers are served on its proper officer, can oust the jurisdiction of the bankruptcy court to proceed, on the return day, to an adjudication of bankruptcy, because a decree dissolving the corporation has been made after such service and before such return day. The papers having been properly served on an officer of the bank, while the bank was in being, and the bank being called and making default to appear, the order of adjudication is substantially a proceeding in rem, and not one in personam, the order being, that, the facts in the petition being found to be true, it is adjudged that the bank became bankrupt before the filing of the petition, and is accordingly adjudged bankrupt. The judgment is, that the bank became bankrupt before the filing of the petition, by having committed the acts of bankruptcy set forth in the petition, and which it committed while it was in being, and that it is adjudged bankrupt in respect of the administration of its property subject to the act, by reason of so having committed such acts of bankruptcy.

Independently of this view, no doctrine can be admitted which would place it in the power of a state, or of the courts of a state, to render nugatory the operation of the act in respect to such corporations as are subject to it. To concede that what was done in the present case operated to deprive this court of the jurisdiction which attached by the filing of the petition and the service of the order to show cause, would be to concede that the legislature of the state might lawfully provide, by a statute to be carried into effect by proceedings in its courts, that the institution of proceedings in bankruptcy against an insolvent corporation, and the service of an order to show cause on its officers, should operate to dissolve the corporation, to be followed, as a consequence, by a defeat of the jurisdiction of the bankruptcy court. The authority of congress to pass the bankruptcy act is paramount and exclusive, and so is the jurisdiction of the district court thereunder. The 39th section of the act provides, that the debtor who commits any of the acts specified in that section shall be deemed to have committed an act of bankruptcy, and, subject to the conditions thereinafter prescribed, shall be adjudged a bankrupt. It is not one of those conditions that a corporation debtor, if in being when the petition is filed and the order to show cause is served, shall continue undissolved until after the adjudication. As respects a corporation proceeded against involuntarily, the proceeding is eminently one in rem against its property, as it cannot be discharged from its debts, nor can its members be discharged from their liability as such for its debts, and the proceeding is one solely for the distribution of its assets among its creditors. The prayer of the petition in this case, according to the form prescribed, was, that the corporation might be declared a bankrupt, and that a warrant might be issued to take possession of its estate, and that the same might be distributed according to law. Although the assignment to the assignee relates back to the commencement of the proceedings in bankruptcy, as declared by the 14th section, yet, by the 14th, the 35th and the 39th sections, the assignee is vested with the title to recover, as assets of the bankrupt, property conveyed or transferred by or out of the bankrupt, in fraud of his creditors, or in fraud of the act, before the filing of the petition in bankruptcy. We are entirely satisfied that the dissolution of the corporation in the present case had no effect to deprive the district court of its jurisdiction.

The suggestion that judgment was pronounced against the corporation without giving it an opportunity of being heard, is answered by the considerations already adverted to. The corporation had all the opportunity of being heard which the district court could or was bound to afford to it. Regarding the proceeding as one in rem, there is nothing in the record of the proceedings in the district court to show that the receiver, as claimant of the property, desired to be heard as presenting the corporation and such property, and was refused a hearing. In the case of In re Independent Ins. Co. [Cases Nos. 7,017 and 7,018], receivers of a dissolved state corporation were admitted to file a plea to the jurisdiction of the bankruptcy court, and such plea was heard on the merits and overruled. In the present case, the order of adjudication recites that no one appeared in opposition, and that the bank was called in open court, and came not, but made default to appear. If the receiver had appeared and asked, as representing the bank and its property, to be heard by answering the petition, and been refused leave to do so, a different question would be presented.

Nor do we perceive any force in the position, as applied to this proceeding in bankruptcy, that it abated by the dissolution of the corporation, so as to be incapable of being proceeded with thereafter. The views we have already announced involve the kindred conclusion, that the proceeding did not abate.

On the undisputed facts in this case, the plaintiff is entitled to the relief he seeks on this motion. In regard to the points raised

by the petition of review respecting the action of the district court in not confirming the resolution of the creditors nominating a trustee and a committee, and in appointing the plaintiff to be assignee, the petition has not been heard before this court, but, in view of the suggestion by the defendant, that his claim of title, as trustee, and the claim of title by the plaintiff, as assignee, ought not to be decided until the action of this court on the petition, we have considered those points sufficiently to be able to say, that we do not perceive in them anything which ought to constrain us to refrain from granting to the plaintiff any relief which we should otherwise deem it proper to grant.

It is proper that the injunction asked for should issue, and that the plaintiff should be appointed receiver, he stipulating to charge no commissions on such assets of his receivership as shall pass therefrom to the trust represented by the assignee of the bankrupt.

[For hearing on exceptions to master's report, see Case No. 11,214.]