## BELA JUDD vs. ISAAC C. IVES & others.

The United States bankrupt act, which went into operation on the 1st of February 1842, did not supersede nor suspend proceedings which were commenced against an insolvent debtor, before that day, under *St.* 1838, *c.* 163.

HUBBARD, J.　This is a petition by Bela Judd, an insolvent debtor, to have the proceedings set aside which were instituted before a master in chancery under *St.* 1838, *c.* 163, for the relief of insolvent debtors.

Two objections to these proceedings have been taken by the petitioner : The *first*, that though his application for the benefit of the act purported to be voluntary, yet such application was forced upon him by his creditors ; and the *second*, that the law of the United States, entitled an act to establish a uniform system of bankruptcy throughout the United States, is in force, which supersedes the insolvent law of Massachusetts, and takes from tne master in chancery the power of proceeding in the premises.

The first objection was abandoned at the hearing ; and in regard to the second, the following facts were agreed by the parties :　On the 24th of December 1841, application was made by the said Judd to William Porter jr. Esq., a master in chancery, for the benefit of the act for the relief of insolvent debtors ; upon which application a warrant issued to a messenger, on the 25th of said December, returnable on the 24th of January 1842.　A meeting of creditors was called upon that day, and said Judd not being prepared to furnish a schedule of his creditors, the meeting was by consent adjourned to February 1st, at which time a meeting was held, and a part of the creditors proved their debts ; others not being prepared, the meeting was adjourned to the 7th of February, at which meeting sundry debts were proved, and the petitioner made his objection to any further proceedings under the petition, for the reasons above stated.　But the master in chancery overruled them ; after which, the creditors, who had proved their claims, chose Isaac C. Ives assignee of the estate, who accepted the trust ; he being the same person who had been

34 *

appointed messenger. Thereupon the master executed a deed of assignment of the estate of the petitioner to the said assignee ; and at the May term of this court, an application was made to set aside the proceedings in this case, and notice was ordered to be given to the assignee and all others concerned, that they might appear and show cause, at the present term, why said application should not be granted.

The question presented for the decision of the court is, whether the bankrupt law of the United States suspends the insolvent laws of this State, and operates as a repeal or stay of all proceedings under them.

We are of opinion that the act of congress to establish a uni form system of bankruptcy throughout the United States does suspend the operation of the law of this Commonwealth, entitled " an act for the relief of insolvent debtors and for the more equal distribution of their effects," as to all persons and cases that are within its provisions ; and we agree fully with the opinion expressed by Story J. *in the matter of Eames,* (5 Law Reporter, 118,) which has been cited by the petitioner's counsel. And the same is in accordance with the authorities quoted, and with the opinion of Parker, C. J. in *Blanchard* v. *Russell,* 13 Mass. 1. But we are nevertheless of opinion, that this consequence of the act is limited to cases instituted under the insolvent law subsequent to the period when the bankrupt law went into operation, and that it cannot supersede or suspend proceedings rightfully commenced under the insolvent act, prior to the time of its going into operation. The counsel for the petitioner admits that it could not, if the property of the insolvent had been actually assigned prior to the first of February, when the bankrupt law went into operation ; but he contends, that as the assignment in this case was not actually made until the 7th of February, the whole proceedings were suspended or superseded. Upon consideration, we are of opinion that the proceedings under the commission are not to be thus separated, but that they are to be treated as the parts of one whole ; that the assignment not only relates back to the first publication of the notice, and vests all the property of the debtor, both real and personal, in

the assignee, but that the debtor is divested of his property, before such assignment, by virtue of the warrant to the messenger and the taking of the property of the debtor into custody, by force of which a qualified property in the estate vests in the messenger, insomuch that no act of the debtor, after the due service and publication of the warrant, can be lawfully done to make any transfer of his property, or to affect the rights of any of his creditors : That the property is, by the act of publication, placed in the custody of the law, in the person of the messenger ; and that the judge or master alone can dispose of the same, by the appointment of an assignee to receive it, or by dissolving the process. The process then, in the present case, having been legally commenced, and the debtor being dispossessed of his property, and the same being in the custody of the law ; the rights of creditors also, who have proved their debts, and others who may prove them, being fixed ; the taking effect of a law of the United States, at a subsequent period, cannot, in our judgment, disturb these proceedings, nor take away the jurisdiction of the state tribunals. And not only no evil will result from such a decision, but, on the other hand, we believe much mischief would follow the suspension of proceedings by the mere force of the bankrupt law. For we see not how any particular point of time can be seized upon, as the true period for suspending these proceedings, if they are to be suspended at all after having been once commenced.

The counsel for the petitioner contends, as has been before observed, that the true point is the time prior to the assignment ; but as the divesting of the property in fact takes place, and the rights of the creditors to it are fixed, before that event, there seems to be no reason for assuming that point in preference to any other. And the consequence of a decision that the bankrupt act affects cases under the insolvent law, commenced prior to its going into force, may lead to the suspension of every existing case of insolvency, in whatever stage of its progress it may be. We think such a result would be productive of much evil.

The effect of suspending the insolvent law as to prior cases will be to change the tribunal, to divest the messenger or assignee

of his rights, for the mere purpose of giving the same trust to others, with new provisions respecting creditors, and without benefit to either debtor or creditor, and with the certainty of lessening the avails of the property, by the increase of expenses consequent upon such a change.

Even if we had doubts upon this subject, we should think it unwise to dissolve these proceedings, upon the mere suggestion of a party, and with the possibility that some proceedings might be commenced under the bankrupt act against this petitioner. It will be time enough to yield in this matter of state jurisdiction, when the question of right has been determined by the highest tribunal.

To confine the operation of the bankrupt act to the prohibiting of those cases commenced after that law went into force, is, for the reasons given, both wise and just, and is entirely in consonance with the opinion expressed by the learned judge, *in the matter of Eames.* We therefore overrule the objection of the petitioner, and the proceedings are to be remitted to the master for his further action thereon.

*Byington,* for the petitioner.

*G. J. Tucker,* for the respondents.