## Case No. 13,992.

THORNHILL v. BANK OF LOUISIANA.

[1 Woods, 1;[1] 5 N. B. R. 367.]

Circuit Court, D. Louisiana.   March, 1870.[2]

BANKRUPTCY — STATE INSOLVENT LAWS — BANKS— PROCEEDINGS AFTER PASSAGE OF BANKRUPT LAW—REVIEW—PETITION—WHERE HEARD.

1. An act of the state of Louisiana, entitled "An act to provide for the liquidation of banks," approved March 14, 1842 [Laws 1842, p. 234], which provided for the forfeiture of the charter of an insolvent bank, for a stay of all suits against such bank and for the appointment of commissioners to collect the assets and pay the debts of the bank, and distribute any surplus there might be, among the stockholders, is in effect a bankrupt law for banks, and was suspended by the passage by congress of the general bankrupt act.

[Cited, but not followed, in Re New Amsterdam Fire Ins. Co., Case No. 10,140. Cited in Re Independent Ins. Co., Id. 7,017.]

2. Proceedings under said act in the state court, after the passage of the general bankrupt law, were without authority, and void.

[Cited in brief in Republic Life Ins. Co. v. Swigert, 135 Ill. 153, 25 N. E. 680.]

3. The decree of the state court, made by virtue of proceedings under said act declaring the charter of the bank forfeited, constitutes no bar to a proceeding in involuntary bankruptcy against the bank under the general bankrupt law.

[Cited in Re Independent Ins. Co., Case No. 7,017; Re Hathorn, Id. 6,214.]

4. An adjudication of bankruptcy, made by the bankrupt court, may be reviewed and reversed or affirmed by the circuit court or judge, upon bill or petition filed under the second section of the bankrupt act.

5. Such bill or petition may be heard by the circuit judge in chambers, at any place within the circuit, whether within or without the district where the proceedings in bankruptcy are pending.

This was a petition addressed to the supervisory jurisdiction of the circuit judge under the second section of the general bankrupt act, to review a decision of the district court for the district of Louisiana. It was heard in chambers at Mobile, in the state of Alabama, on the 31st of January, 1870. The point was made, among others, that the circuit judge was without jurisdiction to hear the cause out of the district of Louisiana.

John A. Campbell and Edward Phillips, for petitioners in review.

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]
[2] [Affirming Case No. 13,990].

Charles M. Conrad, Thomas Allen Clarke, Thomas Hunton, and James B. Eustis, contra.

WOODS, Circuit Judge.   John Thornhill and others filed their petition against the Bank of Louisiana in the United States district court for the district of Louisiana, for an adjudication of involuntary bankruptcy against said bank. After argument and reargument, the court (Hon. E. H. Durell, Judge), on the 11th day of January, 1870, rendered judgment declaring and adjudging the Bank of Louisiana a bankrupt. [Case No. 13,990.] To review and reverse this adjudication, this petition of review was filed on January 22d, in the United States circuit court for the Fifth judicial circuit and the district of Louisiana by C. E. Willoz, P. H. Morgan and J. F. Irvine, as commissioners of the Bank of Louisiana, appointed under a state law, by the Sixth district court of the parish of Orleans, for the purpose of liquidating the affairs of the bank. The defendants to the petition of review except to the petition on the ground that the petitioners (the commissioners aforesaid) are not the legal representatives of the bank; that the act of the general assembly of Louisiana, under color of which the petitioners claim to represent the bank, and which was approved March 14, 1842, was a bankrupt and insolvent law and was suspended by the act of congress approved March 2, 1867 [14 Stat. 517], to establish a uniform system of bankruptcy throughout the United States; that, therefore, the petitioners are without right or authority to interfere in these proceedings, and that they have not been aggrieved by the adjudication aforesaid, and their petition of review should be dismissed.

It appears from the agreed statement of facts, that on the 11th day of February, 1868, the board of directors of the bank passed a resolution authorizing the president of the bank to instruct its counsel to institute proceedings under the second section of the act of the general assembly of Louisiana, approved March 14, 1842, for a meeting of the stockholders of the bank to deliberate and determine upon the expediency of surrendering its charter with a view to a liquidation of the affairs of the bank for the common benefit and advantage of its creditors and stockholders, and in conformity with the provisions of law. By authority of this resolution the counsel of the bank on the 24th of February, 1868, filed in the Sixth district court of New Orleans the petition of the president, directors and company, alleging that the bank was in a position which rendered it impossible for it at that time to discharge its liabilities to its creditors and stockholders, reciting the resolution above mentioned, and praying the court to order a meeting of the stockholders for the purpose of deliberating and determining on the expediency of surrendering

the charter of the bank. It having been found impossible to obtain the necessary attendance of the stockholders to make a voluntary surrender of the charter, the attorney general of the state of Louisiana, on May 1, 1868, filed a petition in the same court for the forfeiture of the charter of the bank. The bank filed no answer to the petition, but the board of directors having been informed by the president that he had been served with an injunction and a citation, and a copy of the petition from the Sixth district court in a suit instituted by the attorney general for the forfeiture of the charter of the bank, the board of directors thereupon "resolved, that the cashier be authorized to inform the attorney general that no answer would be made in said cause, and that the court will decide the question raised upon the facts put in proof on the part of the state." On the 20th of May, 1868, the Sixth district court ordered and decreed that the charter of the bank be declared forfeited, null and void; that all judicial proceedings against the bank be stayed; that a board of commissioners, of whom Charles Eugene Willoz should be one, should be organized for the liquidation of its affairs. Under this judgment three commissioners were appointed who immediately assumed the administration of the property and assets of the bank, and proceeded to a liquidation of the affairs of the bank under the laws of the state of Louisiana, until their proceedings were arrested by the filing of the petition of John Thornhill and others in the United States district court of Louisiana, on May 20, 1869, to have the bank adjudged bankrupt.

The act of the general assembly of Louisiana, under which these proceedings were had, is entitled "An act to provide for the liquidation of banks." The first section of the act provides in certain specified cases for the forced forfeiture by judicial proceedings of the charters of any of the banks located in the city of New Orleans, at the instance of the attorney general, on petition filed by him in the name of the state. The second, third, fourth, fifth, and sixth sections provide for a voluntary surrender of charters and dissolution of the corporations by certain proceedings of the stockholders and the decree of the court. In case either of a forced forfeiture or a voluntary surrender of the charter of a bank, the act requires the court to appoint commissioners who are empowered to take possession of all the property and effects of the bank of every description, with all its books, papers and accounts, to make an inventory of the property and effects, to supervise the destruction of all the notes of the bank found on hand, to collect the assets and pay the debts of the bank, and having done this, to distribute any balance that may remain on hand among the stockholders, ratably, according to the number of shares held by each. The peti-

tioners in review claim that under the provisions of this act, the charter of the Bank of Louisiana was declared forfeited, null and void by a court of competent and general jurisdiction; that as a consequence of this decree, the bank, when proceedings in bankruptcy were commenced against it, was no longer in existence as a corporate body, that it was dead, and no proceedings could therefore be taken against it.

The conflicting views of the petitioners in review and the defendants in review bring up the question whether the act of March 14, 1842, remained in force after the taking effect of the general bankrupt act, on March 2, 1867. If the state law was suspended or repealed by the bankrupt act, the Sixth district court had no jurisdiction to proceed under that law, and notwithstanding it may be a court of general jurisdiction, its decree is void. Where there is no jurisdiction of the subject matter, the action of the court is a nullity and may be impeacned collaterally. In Thompson v. Tolmie, 2 Pet. [27 U. S.] 163, it was held that "if there is a total want of jurisdiction, the proceedings are void and a mere nullity, and confer no right and afford no justification, and may be rejected when collaterally drawn in question." In Voorhees v. Bank of U. S., 10 Pet. [35 U. S.] 474, the court held that "a judgment or execution irreversible by a supreme court cannot be declared a nullity by any authority of law, if it has been rendered by a court of competent jurisdiction of the parties, the subject matter, with authority to use the process it has issued. The errors of the court do not impair their validity; binding until reversed, our most solemn proceedings can confer no right which is denied to any judicial act under color of law which can properly be deemed to have been done coram non judice; that is, by persons assuming the judicial function in the given case without authority of law." In determining whether the act of 1842 continued in force after the taking effect of the general bankrupt act, and as a consequence, whether the Sixth district court had jurisdiction to proceed under that law, it is pertinent to inquire into the nature, purpose and effect of the act. From an inspection of the law, it is evident that it is intended as a bankrupt or insolvent act. It provides for the voluntary and involuntary bankruptcy of insolvent banks. By virtue of the provisions of the law, the entire property of the corporation is taken from its control and placed in the hands of commissioners appointed by a power other than the bank. They, and they alone, are authorized and required to collect its assets, pay its debts, and distribute the surplus, if any, among the stockholders, and by a decree of forfeiture or dissolution, the corporation is discharged from liability after the final settlement of its affairs; for, being dead, it cannot be sued or stand in judgment. Section 24 of the act provides that in all mat-

ters not specially provided for in the act, the powers, duties and liabilities of the commissioners shall be the same as those conferred or imposed on syndics of insolvent estates.

Here we have all the elements of a bankrupt law. Insolvency, surrender of property, its administration by assignees or commissioners, distribution among creditors of the assets, and, in effect the discharge of the insolvent corporation. The act of 1842 has been repeatedly held by the supreme court of Louisiana, to be a bankrupt or insolvent law. In Citizens' Bank of Louisiana v. Levee Steam Cotton Press Co., 7 La. Ann. 288, Eustis, C. J., referring to the act of 1842, says: "We do not perceive in this legislation any thing more than an exercise of the power which the government of a state has over bankrupt estates. This power is inherent in all well regulated governments under which commerce is regulated." In Mudge v. Commissioners of Exchange & Banking Co., 10 Rob. (La.) 464, the court says: "We concur in the opinion expressed by our learned brother of the commercial court that the power of the legislature to provide for the distribution of the property of insolvent corporations which have forfeited their charters, among the creditors is undoubted, and in considering these acts for the liquidation of banks as no other than insolvent laws applicable to such corporations." See, also, Dorville v. Citizens' Bank, 9 Rob. (La.) 366, and French v. Stanton, 1 La. Ann. 8. I am therefore forced by the terms of the law itself and by the construction put upon it by the supreme court of Louisiana, to the conclusion that the act of 1842 is a bankrupt or insolvent law. An examination of the act further shows that its provisions apply, as well as those of the general bankrupt act, to moneyed corporations, and that it prescribes a different rule for the distribution of the assets of insolvent corporations from that established by the bankrupt law.

Can these two laws, applicable to the same subject matter and prescribing different modes of proceeding and different results, co-exist? If not, which must give way? The constitution of the United States having empowered the congress to establish uniform laws on the subject of bankruptcies throughout the United States, and the congress having exercised this power in the enactment of the bankrupt law, and the constitution further providing that the laws of the United States which shall be made in pursuance of the constitution, shall be the supreme law of the land, the inference is irresistible that state laws on the subject of bankruptcy and insolvency must yield to the law of congress on the same subject. Where the state law applies to the same subject matter, and where it differs in material respects from the law of congress, it appears clear that the state law is suspended as long as the law of congress remains in force. Thus in

Griswold v. Pratt, 9 Metc. [Mass.] 23, the court held: "Considering our insolvent law to be a system introduced for the purpose of sequestering the effects of the insolvent debtor and of discharging him from all debts contracted after the enactment of the law, we are satisfied that the two systems cannot stand together; that the provision of the constitution authorizing congress to establish a uniform bankrupt law does not of itself prevent the enactment of insolvent laws by individual states, yet when the power is exercised by congress and a bankrupt law is in force, it does suspend all state insolvent laws applicable to like cases, and that this effect follows the enactment of such bankrupt law, and does not require the actual institution of proceedings in bankruptcy to produce such result." In May v. Breed, 7 Cush. 40, the court uses this language: "When a uniform system of bankruptcy under a law of the United States is actually in force, to the extent to which it reaches, it must of necessity suspend state laws, because they would be repugnant." In Clarke v. Rosenda, 5 Rob. (La.) 33, Garland, J., in speaking of the effect of the general bankrupt act of 1841 [5 Stat. 440], says: "I cannot imagine a more ample investment of jurisdiction than congress has conferred on the circuit and district courts of the United States; and the extent of the jurisdiction proves that the national legislature, whilst exercising its constitutional power to establish a uniform system of bankruptcy, intended to suspend, if not sweep out of existence, the insolvent laws of the states and the jurisdiction of their tribunals, and to establish other tribunals with ample powers where justice should be administered alike to all, and a general system formed and controlled by a body of judges deriving their authority from the same power that made the law." Marshall, C. J., in Sturges v. Crowninshield, 4 Wheat. [17 U. S.] 195, says: "It does not appear to be a violent construction of the constitution of the United States, and is certainly a convenient one to consider the power of the state as existing over such cases as the law of the Union may not reach. * * * It is not the right to establish these uniform laws, but their actual establishment, which is inconsistent with partial acts of the state." See, also, Com. v. O'Hara [6 Phila. 402]; Day v. Bardwell, 97 Mass. 246; Van Nostrand v. Carr [30 Ind. 128]; Ogden v. Saunders, 12 Wheat. [25 U. S.] 213; Ex parte Eames [Case No. 4,237]; Larrabee v. Talbott, 5 Gill, 426. The Bank of Louisiana is, according to the agreed statement of facts, an insolvent moneyed corporation. Such a corporate body falls within the purview of the general bankrupt law of the United States and according to the authorities cited, a state law applicable to a like case is in effect suspended by the law of congress.

I am of opinion, therefore, that on the tak-

ing effect of the general bankrupt act on June 1, 1867, the law of the state of Louisiana, approved March 14, 1842, providing for the liquidation of banks, was suspended; that the state courts had no jurisdiction to proceed under it; that the proceedings of the Sixth district court under the state law against the Bank of Louisiana were unauthorized, coram non judice, null and void. Against this view it is urged that a state alone has power to forfeit the charter of a corporation created by itself; that the general bankrupt law does not provide for the forfeiture of the charter or the dissolution of insolvent corporations; that therefore that part of the state law of 1842, which makes the provision for such forfeiture, is not suspended by the bankrupt law, but left in full force, and the state court under that provision of the law having forfeited the charter of the bank, there is no corporate person in esse, for the bankrupt law to operate on. This argument may be fairly reduced to this proposition; that although the national courts have exclusive jurisdiction in bankruptcy of insolvent moneyed corporations, yet under the device and pretext of forfeiting the charters of the banks, the state courts may oust the jurisdiction of the federal court, assume jurisdiction themselves and give to a state law the effect of suspending or repealing pro hac vice an act of congress expressly authorized by the constitution. This cannot be allowed. No mode of proceeding authorized by a state law can be permitted to have this effect. If the forfeiture under the state law of the charter of the bank raises an obstacle to the jurisdiction of the federal courts, then the clause authorizing the forfeiture of the charter is itself suspended by the federal law. To hold otherwise is to allow the states, by a particular form of legislation, to override a law of congress on a subject over which congress by the constitution has supreme power.

Under the state law of 1842, the courts are not authorized to forfeit the charters of the insolvent banks and there stop. They are required to proceed by the appointment of commissioners to the liquidation of the affairs of the bank; in effect to administer a bankrupt law of the state. Is it possible that by so short and simple a method the state courts can wrest from the federal courts a jurisdiction conferred exclusively on them? I do not undertake to decide what effect the decree of the Sixth district court forfeiting the charter of the bank may have as between the state and the bank, but I hold that the state court had no power or jurisdiction to render a decree which could take from the federal courts a power and jurisdiction given them by act of congress; that for all the purposes of the bankrupt act, and the liquidation of its affairs thereunder, the Bank of Louisiana still exists as a corporate body and may be proceeded against as such in bankruptcy. A corporation may still exist for the purpose of liquida-

tion although its charter may have been surrendered or forfeited. In Commercial Bank v. Villavaso, 6 La. Ann. 542, it was held that the fact that the Commercial Bank had gone into liquidation under the act of March 14, 1842, was no reason why the commissioners appointed to liquidate its affairs should not use the corporate name of the bank in collecting its assets by judicial proceedings.

It results from these views that the Sixth district court had no power to appoint commissioners in liquidation for the Bank of Louisiana; that the attempt to appoint such commissioners is a void act; that the commissioners named by the court do not represent the bank; that they are without right or authority to interfere in their proceedings; that they are not aggrieved by the adjudication of the district court of the United States for the district of Louisiana, and that for these reasons, if no other, their petition for review must be dismissed.

Without further prolonging this opinion, I hold upon the other questions raised in the case: 1. That the circuit judge has territorial jurisdiction to hear and determine this petition of review in chambers at any place within the Fifth judicial circuit. 2. That the adjudication in bankruptcy made by the United States district court may be reviewed by petition of review addressed to the circuit court or any justice thereof. 3. That the judgment of the United States district court adjudging the Bank of Louisiana a bankrupt is sustained by the admitted facts in this case, and ought not to be disturbed.

[It is therefore ordered, adjudged, and decreed that the petition of review filed in this court on the 22d day of January, 1870, by Charles E. Willoz, Philip H. Morgan, and Henry Bezon, as commissioners of the Bank of Louisiana, in the cases of John Thornhill et al. v. Bank of Louisiana, and Mrs. S. Williams v. Bank of Louisiana, be, and the same is hereby, dismissed out of this court, at their costs; that the judgment of the United States district court for the district of Louisiana, rendered on the 11th day of January, 1870, whereby, on the hearing, of the cases aforesaid, the Bank of Louisiana was adjudged a bankrupt, be affirmed; that the order heretofore made that all further proceedings in said district court be suspended, and the marshal enjoined from taking any action under the judgment rendered by the said United States district court in said suits until the further order of this court, be, and the same is hereby, rescinded and revoked; and that the clerk of the circuit court of the United States for the Fifth judicial circuit and district of Louisiana enter this order and decree upon the minutes of said court, and certify the same to the clerk of the United States district court for the district of Louisiana.] [2]

[NOTE. Application was immediately made by the commissioners for an appeal to the su-

[2] [From 5 N. B. R. 367.]

preme court, which was refused by the circuit judge, but was subsequently granted by one of the associated justices of the supreme court, more than 10 days, however, from the date of the decree of the circuit court. It was contended that the appeal, as subsequently allowed, operated as a supersedeas from the date of the first application, and a decree was made by the circuit court that all orders in this cause subsequent to the 21st of January, 1870, be vacated and annulled. Case No. 13,991. After the appeal was filed in the supreme court, the appellees filed a motion to dismiss the same for the want of jurisdiction. The motion was granted. 11 Wall. (78 U. S.) 65.]