## In re BRUSS-RITTER CO.

### (District Court, E. D. Wisconsin. December 10, 1898.)

1. **BANKRUPTCY—EFFECT OF BANKRUPTCY ACT ON STATE INSOLVENCY LAWS.**

   The enactment by congress of a national bankruptcy act suspends the operation of state insolvency laws from the time of such enactment, subject only to such limitations as may be prescribed in the bankruptcy act.

2. **SAME—TIME OF TAKING EFFECT.**

   In regard to its suspensive effect on state insolvency laws, the national bankruptcy act of 1898, providing that "this act shall go into full force and effect upon its passage: provided, however, that no petition for voluntary bankruptcy shall be filed within one month of the passage thereof, and no petition for involuntary bankruptcy shall be filed within four months of the passage thereof," and that "proceedings commenced under state insolvency laws before the passage of this act shall not be affected by it," took effect, as to involuntary proceedings, from the date of its approval, July 1, 1898, and not from November 1, 1898, when petitions in such cases might first be filed.

3. **SAME.**

   The postponement of the right to file petitions in involuntary cases until four months after the passage of the bankruptcy act did not authorize state courts, in the interval, to take jurisdiction of proceedings begun under state insolvency laws, being a mere regulation of procedure, and not a denial or impairment of the rights of suitors.

4. **SAME—JURISDICTION OF COURTS OF BANKRUPTCY.**

   A district court of the United States, sitting in bankruptcy, has jurisdiction to entertain a petition in involuntary proceedings against a corporation amenable to the law, and to appoint a temporary receiver of its effects, notwithstanding the fact that proceedings had been begun against the same corporation in a state court, under a statute of the state, after the passage of the national bankruptcy law, but before the date when involuntary petitions under it could be filed, founded on alleged insolvency and fraud of the defendant, and seeking to take possession of its assets for the same purposes involved in the bankruptcy proceedings, and including an application for the appointment of a receiver.

In Bankruptcy. On motion to dismiss petition for want of jurisdiction.

C. W. Briggs and O'Connor, Hammel & Schmitz, for the motion.
McCabe & Dahlman, opposed.

SEAMAN, District Judge. The petition by five creditors states a prima facie cause within the provisions of the recent act of congress for an adjudication of involuntary bankruptcy against the Bruss-Ritter Company as an insolvent corporation of Wisconsin. The petition was filed November 4, 1898, and on November 11, 1898, upon petition showing cause therefor, a receiver of the effects of said corporation was appointed by order of this court. The motion to dismiss is founded solely upon the contention that the bankruptcy act of July 1, 1898, having postponed the filing of any petition for involuntary bankruptcy until November 1, 1898, was inoperative in the case at bar, because an action was commenced in the superior court of Milwaukee county on October 27, 1898, founded upon alleged insolvency and fraud, to take possession of the assets of the corporation for the same purposes involved in the bankruptcy proceedings, pursuant to provisions of the Wisconsin statute, which action was pending when this petition was filed,

including an application for the appointment of a receiver. The power of congress to enact a general bankruptcy statute is secured by constitutional provision. In the absence of such congressional enactment, the states are free to provide for insolvency relief of limited extent, but when congress exercises its authority by a general enactment all state action is suspended from such time and subject only to such limitations as may be prescribed in the act. Tua v. Carriere, 117 U. S. 201, 209, 6 Sup. Ct. 565. As remarked in Platt v. Archer, 9 Blatchf. 559, Fed. Cas. No. 11,213, this authority of congress "is paramount and exclusive, and so is the jurisdiction of the district court thereunder." The doctrine thus stated is well established, and is unquestioned upon this motion, except that it is contended (1) that the act of July 1, 1898, was not intended to go into effect, in cases of involuntary bankruptcy, until November 1st, and (2) even if so intended, that no remedy was provided for the intervening four months, leaving the state enactments unimpaired, so that in actions commenced meantime for their enforcement jurisdiction is retained of the subject-matter without interference by proceedings under the bankruptcy act.

1. The intention of the act to have general force and effect from the date of passage is expressly declared in the concluding paragraphs a and b, as follows:

"a. This act shall go into full force and effect upon its passage: provided, however, that no petition for voluntary bankruptcy shall be filed within one month of the passage thereof, and no petition for involuntary bankruptcy shall be filed within four months of the passage thereof.

"b. Proceedings commenced under state insolvency laws before the passage of this act shall not be affected by it."

The date of passage is also referred to in defining acts of bankruptcy in section 67, and there is no provision which gives countenance to, or even suggests, the legislative intent to postpone the force of the enactment, unless the postponement of time for filing petitions must be taken as conclusive of such purpose. Decisions interpreting the bankruptcy act of 1867 are cited as supporting the latter view. Judd v. Ives, 4 Metc. (Mass.) 401; Day v. Bardwell, 97 Mass. 246; Lothrop v. Foundry Co., 128 Mass. 123; Martin v. Berry, 37 Cal. 208; and cases noted in last edition of Bump, Bankr. 98. These authorities are clearly inapplicable, as there is no parallel in the terms of that act with those here in question. Section 50 of the act of 1867 provided:

"That this act shall commence and take effect, as to the appointment of officers created thereby and the promulgation of rules and general orders, from and after the date of its approval: provided, that no petition or other proceeding under this act shall be filed, received or commenced before the first day of June," 1867.

The terms were not clear in stating the time when the act should have full force, but were quite clear in naming alone for its immediate effect the preliminary appointments, rules, and orders, and then providing that no proceedings should be instituted before June 1st. Courts differed in fixing the time of its going into general effect, and it is unnecessary to discuss here the correctness of one view or the other. That which was upheld in the cases cited, namely, that it was not operative to suspend state provisions until June 1st, may well be assumed, for the purposes of this motion, as the sound interpretation. But there is

no such ambiguity in the terms of the present act. The intention that "it shall go into full force and effect upon its passage" is well expressed, leaving no room for invoking the canons of interpretation applied to the former act; and to the extent that the actual intent of congress controls I am of opinion that the act is operative from July 1, 1898. This view is well fortified by a decision of the supreme judicial court of Massachusetts, filed November 3, 1898, in Manufacturing Co. v. Hamilton, 51 N. E. 529, cited by counsel for petitioners, in which the identical questions urged upon the present motion were directly involved and determined. After pointing out the distinction from the terms of the earlier statutes, especially that of 1867, and the cases thereunder, it is held that the change was manifestly intentional, and within the power of congress, and was effective to supersede the insolvency laws of the commonwealth from the date of its passage so far "as to deprive the courts [of the state] of jurisdiction to entertain petitions for the commencement of insolvency proceedings filed after July 1, 1898." The court, speaking unanimously through Knowlton, J., concludes the opinion as follows:

"These various provisions affecting the rights and conduct of debtors and creditors are different from those previously existing in most of the states, and perhaps different from those found in the laws of any state; and they supersede all conflicting provisions. The only limitation upon the full and complete operation of the act upon its passage is that the right to begin proceedings is postponed one month in the case of voluntary petitions and four months in the case of involuntary petitions. Whenever the proceedings are commenced, the conduct of the parties after the passage of the act is to be tested by its requirements. The only saving clause affecting the jurisdiction of state courts provides for cases commenced in those courts before the passage of the act. The plain implication is that proceedings commenced in the state courts after the passage of the act are unauthorized. This is in accordance with the earlier language giving the statute full force and effect from the time of its passage, except that the filing of petitions is to be postponed for a short time. We are of opinion that the language was chosen to make clear the purpose of congress that the new system of bankruptcy should supersede all state laws in regard to insolvency from the date of the passage of the statute."

2. With the purpose of congress thus established to have the law take effect from July 1st, the proviso to postpone the filing of petitions thereunder, in voluntary cases one month and in involuntary cases four months, cannot operate to nullify that purpose for the reasonable preparatory time so directed for commencing the proceedings. It is probably true, as counsel argues, that the authority granted to congress by the constitution to establish uniform laws on the subject of bankruptcy cannot be exercised by the mere abolition or suspension of state insolvency provisions without furnishing a system of remedies in their place. But such system is clearly provided by this act, and the fact that petitions may not be received before the time fixed is a mere regulation of procedure,—the time and manner of commencing actions being always subject to regulation,—and in no sense can it be held that the remedies of suitors, which are presumably adequate and complete, are thereby impaired. There is no vested right in suitors to have the courts open at all times, either to entertain their actions or afford hearings without delay, and it is sufficient for the preservation of all rights

that redress is provided, and can be obtained with reasonable promptness. I am therefore of opinion that congress has duly exercised its paramount authority to establish a uniform system of bankruptcy, and, having placed in the United States courts exclusive cognizance of bankruptcy causes, this court is constrained to entertain the petition in question. There is no jurisdiction to administer in the state courts causes which are clearly so defined in this act, and no ground for applying the doctrine which prevails where jurisdiction is concurrent giving priority to that which is first obtained. The motion to dismiss the petition must be overruled. It is so ordered.