83    29
s184s110

## John M. Costello and D. F. Sargent v. Frank Harbaugh, Assignee.

1. BANKRUPTCY—*Power of Congress to Establish a Uniform System.* —The fourth clause of Section 8 of Article 1 of the Constitution of the United States grants to Congress the power " to establish uniform laws on the subject of bankruptcies throughout the United States."

2. SAME—*Limits of the Jurisdiction of Congress.*—The jurisdiction of Congress extends to all cases where the law causes to be distributed the property of the debtor among his creditors; this is its least limit. Its greatest, is the discharge of the debtor from his contracts. And all ntermediate legislation affecting substance and form, but tending to further the great end of the subject—distribution and discharge—are in the discretion of Congress.

3. SAME—*Doctrine of the Federal Courts.*—It is the doctrine of the Federal courts that all judicial proceedings, whether voluntary or involuntary, for the distribution of the effects of an insolvent debtor among his creditors, are subject to the paramount control of Congress when it chooses to legislate upon the subject; and that when it acts the power of the State and the jurisdiction of its courts are in abeyance.

4. SAME—*Suspension of State Insolvency Laws.*—As soon as a national bankruptcy act goes into effect all State assignment and insolvency laws become suspended and remain entirely inoperative while the national act is in force, so far as they cover the same subjects as the bankruptcy act, and the jurisdiction of State courts under such State laws is in abeyance during that period, regardless of the question whether proceedings in bankruptcy have been instituted or not.

5. INSOLVENCY LAWS—*When Not Affected by Federal Bankruptcy Laws.*—Proceedings commenced under State insolvency laws before the passage of the bankruptcy law of 1898 are not affected by it.

6. SAME—*State and Federal Systems.*—The two systems, State and Federal, act upon the same subject-matter, and persons, both debtors and creditors, have the same rights, and generally have the same object, the equal distribution of the debtor's assets among all his creditors; and both can not go on without collision.

7. SAME—*State Assignment Act and the Federal Bankruptcy Act can Not Stand Together.*—The State statute and the bankruptcy act can not stand together. The bankruptcy act is the supreme law of the land, enacted in pursuance of an express grant of constitutional authority; and, in so far as any State law is in conflict with it, such law is suspended and remains inoperative until the Federal enactment is repealed. And until then all matters embraced in it must be governed by its provisions.

8. SAME—*Power of State Courts Suspended.*—The operation of the State Law is suspended, and the State courts are without jurisdiction or authority to administer the estates of bankrupts or insolvents.

9. VOLUNTARY ASSIGNMENT—*An Act of Bankruptcy.*—By making an assignment for the benefit of creditors under the State law a person commits an act of bankruptcy under the act of 1898.

10. BANKRUPT ACT—*When it Went Into Force.*—The national bankrupt act, by its terms, went into full force and effect upon its passage July 1, 1898, notwithstanding the provision that no voluntary petition should be filed within one month of the passage of the act, and that no petition for involuntary bankruptcy should be filed within four months of the passage of the act. It was operative from the date of its passage, and was effective from that date to supersede the insolvency laws of the several States.

11. STATE COURTS—*Power of, in Voluntary Assignments.*—Under an assignment made on the 16th day of July, 1898, the County Court is without jurisdiction to enter an order requiring a constable to show cause why an order should not be entered requiring him to surrender to the assignee property of the assignor distrained for rent.

**Voluntary Assignment.**—Appeal from the County Court of Henry County; the Hon. A. R. Mock, Judge, presiding. Heard in this court at the December term, 1898. Reversed. Opinion filed May 19, 189J.

Graves & Brown, attorneys for appellants.

George E. Waite, John P. Hand and George W. Shaw, attorneys for appellee.

Mr. Presiding Justice Dibell delivered the opinion of the court.

On July 16, 1898, Alexander White, of Henry county, an insolvent, made an assignment for the benefit of his creditors to Frank Harbaugh. The latter accepted the trust in writing, filed the assignment and acceptance of record, presented the assignment to the County Court of Henry County, gave bond which that court approved, and entered into the exclusive possession of the property assigned, a stock of hardware in a store in Geneseo. Thereafter D. F. Sargent, claiming White owed him $325 for rent of the store building, issued a distress warrant for said rent, and placed it in the hands of John M. Costello, a constable. Costello seized the store and goods and excluded Harbaugh therefrom. Harbaugh presented the facts to the County Court by petition, and it cited Costello and Sargent to show cause why an order should not be entered requiring them to surrender the property to the assignee. Costello and Sargent demurred to the petition on the ground that our State assignment law had been superseded by the national bankruptcy law of July 1, 1898, and that the County Court had no jurisdiction to act in the matter. The demurrer was overruled. Costello and Sargent did not answer further. They were defaulted, and the County Court entered an order that they surrender the property to the assignee. This is an appeal from that order. If the County Court had jurisdiction of the assignment and power to act under the State assignment law, the order entered was proper, under Wilson v. Aaron, 132 Ill. 238, and other cases. The question is whether, since

July 1, 1898, the County Court has and may exercise, in cases of assignments made since that date, the jurisdiction conferred upon it by the State assignment law.

Congress passed bankruptcy acts in 1800, 1841, 1867 and 1898. Each was based upon the fourth clause of Section 8 of Article 1 of the Constitution of the United States, which grants to Congress the power " to establish   *   *   *   uniform laws on the subject of bankruptcies throughout the United States." In English law, the source of our common law, bankruptcy was a proceeding instituted by the creditor against an insolvent trader only, and was distinguished from the volunteer efforts of a debtor to surrender his property to his creditors, and from proceedings against a debtor who was not a trader. It was early contended that the term " bankruptcies," in the Federal Constitution, was thus limited in meaning, and that the national bankruptcy acts were unconstitutional, so far as they permitted proceedings by the debtor, and against a debtor not a trader. After the judicial discussion of this subject in Kunzler v. Kohans, 5 Hill, 317; Sackett v. Andross, 5 Hill, 327; Nelson v. Carland, 1 How. 265; and In re Klein, by Catron, J., upon the circuit, published in 1 How. 277, the views of Judge Catron seem to have been generally adopted and the wider meaning of " bankruptcies " applied to that term in the Federal Constitution. In discussing the question as to what limits the jurisdiction of Congress was restricted by the term " bankruptcies," Catron, J., there said : " It extends to all cases where the law causes to be distributed the property of the debtor among his creditors; this is its least limit. Its greatest, is a discharge of the debtor from his contracts. And all intermediate legislation affecting substance and form, but tending to further the great end of the subject—distribution and discharge—are in the competency and discretion of Congress.   *   *   *   I deem every State law a bankrupt law, in substance and in fact, that causes to be distributed by a tribunal the property of a debtor among his creditors; and it is especially such if it causes the debtor to be discharged from his contracts, within the limits

Costello v. Harbaugh.

prescribed by the case of Ogden v. Saunders, 12 Wheat. 213. Such a law may be denominated an insolvent law; still it deals directly with the subject of bankruptcies, and is a bankrupt law in the sense of the Constitution; and if Congress should pass a similar law it would suspend the State law while the act of Congress continued in force." Since that decision it is the doctrine of the Federal courts, and of most others, that all judicial proceedings, whether voluntary or involuntary, for the distribution of the effects of an insolvent debtor among his creditors, are subject to the paramount control of Congress when it chooses to legislate upon the subject; and that when it acts the power of the State and the jurisdiction of its courts are in abeyance.

Two different theories have, however, been adopted as to the time when the authority of the State and the jurisdiction of its courts cease. One doctrine is that as soon as a national bankruptcy act goes into effect all State assignment laws and State insolvency laws become suspended and remain entirely inoperative while the national act is in force, so far as they cover the same subjects as the bankruptcy act, and that the jurisdiction of State courts under such State laws is in abeyance during that period, and that regardless of the question whether proceedings in bankruptcy have been instituted. This principle had its origin in a declaration *arguendo* by Chief Justice Marshall, in Sturges v. Crowninshield, 4 Wheat. 122. The following cases substantially support this position: Blanchard v. Russell, 13 Mass. 1; Judd v. Ives, 45 Mass. 401; Griswold v. Pratt, 50 Mass. 16; Chamberlain v. Perkins, 51 N. H. 336; Rowe v. Page, 54 N. H. 190; Damon's Appeal, 70 Maine, 153; In re Reynolds, 8 R. I. 485; Van Nostrand v. Carr, 30 Md. 128; Lavender v. Gosnell, 43 Md. 153; Cassard v. Kroner, 4 B. R. 569; Tobin v. Trump, 3 Brewst. 288; Martin v. Berry, 37 Cal. 208; Ex parte Eames, 2 Story, 222; Thornhill v. Bank, 1 Woods, 1; Platt v. Archer, 9 Blatchf. 559; In re Merchants Insurance Co., 3 Biss. 162; In re Langley, 1 B. R. 559; In re Independent Insurance Co., 6 B. R. 260; and the following decisions under the present

bankruptcy law, viz.: Parmenter Manufacturing Co. v. Hamilton, (Mass.) 51 N. E. 529; In re Curtis, 91 Fed. 737 (S. Dist. of Ill., Allen, J.); In re Smith, 92 Fed. 135 (Dist. of Ind., Baker, J.); In re Bruss-Ritter Co., 90 Fed. 651 (E. Dist. of Wis., Seaman, J.); In re Etheridge Furniture Co., 92 Fed. 329 (Dist. of Ky., Barr, J.). The other doctrine is that the State laws remain in force and the State courts retain and may exercise jurisdiction thereunder until a court of bankruptcy has adjudged the debtor a bankrupt and seeks to assert dominion over the distribution of his estate among his creditors, at which time, and not till then, the State laws become suspended as to said debtor, and the State courts must relinquish or cease to have jurisdiction over that particular debtor and the distribution of his estate among his creditors. This position has the support, to a greater or less extent, of the following authorities : In re Ziegenfuss, 24 N. C. 463; Hawkins' Appeal, 34 Conn. 548; Maltbie v. Hotchkiss, 38 Conn. 80; Geery's Appeal, 43 Conn. 289; Beck v. Parker, 65 Pa. St. 262; Shyrock v. Basehore, 82 Pa. St. 159; Reed v. Taylor, 32 Iowa, 209; and under the present bankruptcy law, In re Stivers, 91 Fed. 366 (E. Dist. of Mo., Adams, J.). Other cases upon either side of this question are collated in Bump on Bankruptcy, 11th Ed., pp. 96 to 102, and Collier on Bankruptcy, pp. 427 to 432. The decisions *pro* and *con* can not be reconciled.

It is contended that the Supreme Court of the United States in Mayer v. Hellman, 91 U. S. 496, has sustained the continued operation of the State assignment laws and the jurisdiction of the State courts thereunder while a national bankruptcy act is in force. That case arose in Ohio, which had an assignment law much resembling our own, and some things said in the opinion favor the conclusion suggested, but the opinion does not so decide. The case was that while the bankruptcy act of 1867 was in force certain debtors made an assignment for the benefit of creditors, and the estate was administered in the Probate Court under the State assignment law. More than six months after the assignment, and after the time had expired when the valid-

ity of said assignment could be assailed in bankruptcy proceedings (Act of 1867, Sec. 35), said debtors were put into bankruptcy. Thereafter the assignee in bankruptcy began that proceeding to compel the State assignee to turn over to him the assets. The Supreme Court held the assignment good at common law, and that after that lapse of time there was no property in the hands of the State assignee which the assignee in bankruptcy could claim, and that the question whether the bankrupt law of Congress suspended proceedings under the State law, though argued, was not involved. The court held the assignment was to be treated as if the State law was not in existence. Boese v. King, 108 U. S. 379, goes no further. In Tua v. Carriere, 117 U. S. 201, the doctrine is distinctly recognized that State insolvent laws are suspended and inoperative while a bankruptcy act is in force. That our statute regulating voluntary assignments is a general insolvent law was held in Hanchett v. Waterbury, 115 Ill. 220.

Section 71b, of the present bankruptcy act, is as follows :

" Proceedings commenced under State insolvency laws before the passage of this act shall not be affected by it."

The inference is obvious that Congress intended the act should affect such proceedings commenced thereafter.

In some of the cases cited which sustain the continued efficiency of State laws while a bankruptcy act is in force, that conclusion is based upon provisions of the State law to secure equality of distribution of the estate among creditors, and upon the absence from the State law under discussion of any provision for the discharge of the debtor from his debts. The assignment law of Illinois has these features. It is argued that in such States there is no conflict between the spirit and purpose of the State law and of the bankruptcy act. This contention was, we think, answered by what was said concerning the bankruptcy act of 1867, in Chamberlain v. Perkins, *supra ;*

" The two systems act upon the same subject-matter, upon the same persons, both debtors and creditors, upon the same rights and generally have the same object, namely,

the equal distribution of the debtor's assets among all his creditors; and it is very obvious both can not go on without collision. In accomplishing the objects of both systems different means are used. Under the State law the assignee is selected by the debtor alone; by the bankrupt law he is chosen by the creditor. To enforce a faithful surrender and application of all the debtor's assets, and, generally, to insure the good faith and fair dealing of the bankrupt, the avoiding of fraudulent preferences, and to insure an equitable distribution of all his assets, the provisions of the bankrupt law are very stringent and effective. Under the provisions of the Federal Constitution, and from the nature of the case, the law of Congress must be paramount. The two systems can not stand together; it would be totally inconsistent with that uniformity which it was the object of the Constitution to establish."

So also in the case entitled In re Smith, *supra* (under the bankruptcy act of 1898), the court, after stating the provisions of the State assignment law of Indiana, further said:

"This statute constitutes an insolvency law, and regulates the making of an assignment, which must embrace all the property of the debtor, as well as every step to be taken in winding up the estate of the bankrupt, to the distribution of its proceeds among those entitled to share therein, all to be administered in a State court possessed of general jurisdiction at law and in equity. * * * The State statute and the bankruptcy act can not stand together. The bankruptcy act is the supreme law of the land, enacted in pursuance of an express grant of constitutional authority; and, in so far as any State law is in conflict with it, such law is suspended and remains inoperative until the Federal enactment is repealed. All matters embraced in the bankruptcy act must be controlled and governed by its provisions. Among these are the right and duty of the bankruptcy court to have insolvent estates settled in and by it, under and in accordance with the provisions of the bankruptcy act; to have acts of bankruptcy affecting the settlements of estates determined by it (section 3); to have the rights of debtors to file voluntary petitions, and of creditors to file involuntary petitions, determined by it (section 4); and to have liens and preferences governed by it (sections 60, 67). These and various other provisions of the bankrupt act affecting the conduct and rights of debtors and creditors, are different from those found in the statute of this State touching gen-

eral assignments. In my opinion, the operation of the State law is suspended, and the State courts are without any jurisdiction or authority to administer the estates of bankrupts or insolvents."

In our judgment the decided weight of judicial authority sustains the position that the power of the State courts to act under State assignment and insolvent laws is wholly suspended while a national bankruptcy act is in force. We think this conclusion best adapted to avoid confusion and judicial conflict and to make the national bankrupt act " uniform," as the Constitution designed it should be. By making this assignment for the benefit of creditors White committed an act of bankruptcy under the present bankrupt act. The design of the Federal law is to provide a mode by which the property of an insolvent may be divided *pro rata* among his creditors. The authorities which contend that the State law remains operative, and that the State courts retain and can exercise jurisdiction, concede that the instant the Federal court has adjudged the debtor a bankrupt the State court must surrender the property and cease to exercise jurisdiction. Under this position we have not a uniform law governing the subject, but as many different laws as there are States of the Union, and in addition one paramount law to which they must all yield when, and only when, the jurisdiction of the Federal court is invoked. We fail to see that such a system meets the constitutional requirement of uniformity. It moreover violates the rule that when different courts have power to take jurisdiction of and administer property the court which first acquires the property will retain and administer it to the exclusion of others. If, however, upon the enactment of a national bankruptcy law, the judicial distribution among creditors of the property of insolvent debtors, who desire their property distributed to their creditors, and of insolvent debtors who have been guilty of an act of bankruptcy, is committed exclusively to the courts of bankruptcy appointed by such law, then we have a uniform system by which such distribution may be effected through the medium of courts.

This record, however, presents another question. The present bankruptcy act was approved July 1, 1898. Section 71a, thereof, is as follows: " This act shall go into full force and effect upon its passage: Provided, however, that no petition for voluntary bankruptcy shall be filed within one month of the passage thereof, and no petition for involuntary bankruptcy shall be filed within four months of the passage thereof." This assignment was made and filed in the County Court, and the assignee's bond approved by said court, during July, 1898. Section 50 of the bankruptcy act of 1867, approved March 2, 1867, was as follows:

" This act shall commence and take effect as to the appointment of officers created hereby and the promulgation of rules and general orders from and after the date of its approval: Provided, that no petition or other proceeding under this act shall be filed, received or commenced before the first day of June, 1867."

It was held in Martin v. Berry, 37 Cal. 208; Chamberlain v. Perkins, 51 N. H. 336, and Day v. Bardwell, 97 Mass. 246, that the insolvent laws of the State were not superseded by that bankruptcy act till June 1, 1867. This contention was rejected by the Federal court of Ohio. In re Langley, 1 B. R. 559. The decisions in the State courts just cited are in part predicated upon the argument that the provision in the act of 1867, that " this act shall commence and take effect as to the appointment of officers created hereby and the promulgation of rules and general orders from and after the date of its approval," implies that it was not to take effect at that time as to the other respects concerning which no special provision was made, and was only intended to allow preliminary arrangements to be made so that the complete system might be put into effect at once when the time for instituting judicial proceedings should arrive. It may well be assumed that these provisions of the prior bankruptcy act and these judicial constructions thereof were in the minds of the framers of the act of 1898, and that they designed to leave no question open as to the time it should take effect when they enacted that it should go into full force and effect upon its passage, and that proceedings begun

Costello v. Harbaugh.

under State insolvency laws before its passage should not be affected by it. We conclude Congress purposely excluded the construction put upon the former act and designed State insolvency laws should be wholly superseded and rendered inoperative on July 1, 1898. In the case entitled In re Rouse, Hazard & Co., 91 Fed. 96, the Circuit Court of Appeals, Seventh Circuit, by Jenkins, J., said: "The bankrupt act, by its terms, went into full force and effect upon its passage, July 1, 1898, and notwithstanding the provision that no voluntary petition should be filed within one month of the passage of the act and that no petition for involuntary bankruptcy should be filed within four months of the passage of the act, the bankrupt law was operative from the date of its passage, and was effective from that date to supersede the insolvency laws of the several States." (In re Bruss-Ritter Co., 90 Fed. 651.) Whether the act furnished a sufficient remedy during July, 1898, is a question for the law making power only. "There is no vested right in suitors to have the courts open at all times either to entertain their actions or afford hearings without delay." Congress might have provided petitions in bankruptcy should only be filed in term time, and might thus have caused a temporary delay, but that would not have prevented the law from becoming the sole law upon the subject to the exclusion of the State laws.

Very likely the assignment to Harbaugh was valid at common law. It may be the assignee could have recovered the goods by replevin, but this was a summary proceeding of which the County Court had jurisdiction only by virtue of our State assignment law. We conclude it is in harmony with the greater weight of judicial authority and the sounder reasons to hold that law inoperative and the jurisdiction of the County Court thereunder suspended while the national bankruptcy act is in force. It follows that the court below had no jurisdiction to make the order in question, and it is therefore reversed.