## Jesse B. Dille v. The People of the State of Illinois.

### Gen. No. 4,409.

1. COUNTY COURT—*when, cannot compel insolvent debtor to disclose whereabouts of property.* The County Court has no power to compel an insolvent debtor, who has made a voluntary assignment, to disclose the whereabouts of property admittedly in his possession, but to which the title has been adjudicated to be in the assignee.

2. VOLUNTARY ASSIGNMENT ACT—*when, not suspended by bankruptcy act.* The Voluntary Assignment Act of Illinois is not suspended by the Federal Bankruptcy Act as to a corporation not within the purview of such latter act.

Commitment for contempt. Error to the County Court of Lee County; the Hon. ROBERT H. SCOTT, Judge, presiding. Heard in this court at the October term, 1904. Reversed. Opinion filed March 8, 1905.

H. A. BROOKS, for plaintiff in error.

HENRY S. DIXON and JOHN S. DORNBLASER, for defendant in error.

MR. PRESIDING JUSTICE FARMER delivered the opinion of the court.

Plaintiff in error and J. W. Watts and J. C. Flint were the directors of the Northern Illinois Normal School and Dixon Business College, a corporation. On the 26th of March, 1904, Watts and Flint, as directors of said corporation, executed to Charles A. Lucas, as assignee, a deed of assignment under the act concerning voluntary assignments for the benefit of creditors, to the property and effects of the corporation. There were named in the schedule filed with the deed together with other property, a set of Illinois Supreme Court Reports, a set of American and English Encyclopedia of Law, Starr and Curtis's Statutes, two desks, two office chairs, one set of double harness, a surrey and some other smaller articles. After the assignee had accepted the trust and given bond, he presented a petition to the County Court in which he alleged that he had been unable to reduce to possession all the personal property of the corporation conveyed to him by

the deed of assignment and that he was informed and believed plaintiff in error had certain of it in his possession and that he refused to deliver it to petitioner or inform him of its whereabouts. He therefore prayed that a citation issue for plaintiff in error returnable forthwith and that he be required "to answer under oath such matters as may be then and there inquired of him and that the said Jesse B. Dille may be then and there fully examined under oath as to the amount and situation of said estate." Thereupon the court ordered a citation to issue commanding plaintiff in error to appear before the County Court April 8, 1904, to answer under oath "such matters as may then and there be inquired of him, of and concerning Northern Illinois Normal School and Dixon Business College, a corporation insolvent, and that the said Jesse B. Dille may be then and there fully examined under oath as to the amount and situation of the estate of said insolvent."

Plaintiff in error by his attorney filed an answer in which he alleged he was president and one of the stockholders of the corporation but did not join in the deed of assignment, and denied that he had then or ever had in his possession any of the property of the corporation, and alleged the property the assignee was claiming was his property and never was in the possession of the assignee. Thereafter, plaintiff in error was, over the objections of his counsel, required by the court to be sworn and permitted to be interrogated as to the whereabouts of the property in dispute. In answer to said interrogatories he stated that the property was his and was in his possession. He further testified the property was bought and paid for by him, that he made a bill of sale of certain property to the college but not to the property in dispute, that he had loaned the law books to the college for the use of the law students but that they were his private property; that he had nothing to do with making the deed of assignment and had no knowledge of what it purported to convey. Plaintiff in error refusing to answer as to the location of the property, the assignee was called and testified that the property be-

longed to the corporation, that he did not know whether
it was in the bill of sale from plaintiff in error to the cor-
poration or not, that it was not itemized in the bill of sale
to tne college, but he said before plaintiff in error made the
bill of sale he signed another paper in which the property
was itemized. What the paper was the witness did not
state. He testified he did not know what became of it.
The court then adjudged plaintiff in error in contempt for
failing to answer the questions as to where the property
was located and sentenced him to six days in jail. From
this judgment this writ of error is prosecuted.

Defendant in error relies upon section 8, chapter 10b,
Hurd's R. S., 1903, to sustain the proceeding and judgment
of the County Court. That part of said section necessary to
be considered reads as follows : "The County Court of the
county may, upon application of the assignee or assignees,
or any creditor, compel the appearance in person of the
debtor or debtors before such court, by citation return-
able forthwith, or at the next term thereof, and by attach-
ment to answer, under oath, such matters as may then and
there be inquired of him, her or them; and such debtor or
debtors may then and there be fully examined under oath,
as to the amount and situation of his, her or their estate,
and the names of the creditors and amounts due each, with
their places of residence; and may compel the delivery to
the assignee or assignees, of any property or estate em-
braced in the assignment." An examination of this record
discloses that the only object and purpose of the citation
and inquiry thereunder was to ascertain where the disputed
property was. It was not for the purpose of determining
what property had passed to the assignee and the nature
and extent of the interest acquired by him, which it was
held in Davis v. Chicago Dock Co., 129 Ill. 180, the court
had the power to do. There was no pretense of adjudicat-
ing the conflicting claims of plaintiff in error and the
assignee to the property, but as disclosed by the examina-
tion of plaintiff in error, the sole object of the proceeding
was to compel him to tell where the property was. The

judgment of the court recites that plaintiff in error was committed for contempt because of "having stated to the court in open court that the property was in his possession but refused to state where the same or any part thereof was situated or located." Undoubtedly if the property had been conceded to have been the property of the insolvent corporation when the deed of assignment was made, and plaintiff in error had it in his possession or was concealing it, the court would have had the power to have required him to disclose its whereabouts. This we think is the scope and purpose of said section eight. But if it belonged to plaintiff in error, the court had no power or authority to deal with it and it would not matter where it was. We are of opinion that until the assignee's right to the property had been established in a court of competent jurisdiction, the County Court was without authority to compel plaintiff in error to answer the questions as to where it was.

Much reliance is placed by counsel for defendant in error upon the last clause of said section eight, viz: "And may compel the delivery to the assignee or assignees, of any property or estate embraced in the assignment." The word "embraced" as here used we construe to mean the same thing as " comprehended " in the first section of the act. It was the purpose of the legislature that voluntary deeds of assignment for the benefit of creditors should have the effect to vest in the assignee the entire estate and property of the insolvent, not exempt by law, whether described in the deed and inventory or not. The first section of the act after requiring the insolvent to file with the deed an inventory of all his property and a list of his creditors, is as follows: "but such inventory shall not be conclusive as to the amount of the debtor's estate, but such assignment shall vest in the assignee or assignees the title to any other property, not exempt by law, belonging to the debtor or debtors at the time of making the assignment *and comprehended within the general terms of the same.*" The unmistakable meaning of this language is that all the debtor's property not exempt by law, whether named in the de-

scriptions filed or not is, "comprehended within the general terms" of the assignment. We think " embraced " as used in the eighth section is synonymous with "comprehended" as used in the first section. If this property did not belong to the corporation it could not have been embraced or comprehended in the assignment. The description of the property in the inventory filed with the deed could not be conclusive against a third party claiming it. Plaintiff in error had not joined in the deed of assignment and inventory filed therewith, the property was not and never had been in the possession of the assignee and the court was not justified in assuming that it belonged to the estate of the insolvent, or in assuming to deal with it till the question of ownership had been settled in favor of the assignee. If in a proper proceeding in a proper forum it had been adjudged to be in the assignee, then the court would have had the power to require plaintiff in error to tell where it was. Although plaintiff in error was a stockholder and officer in the insolvent corporation, we fail to see how this could give the court any greater power over him of the question involved, than it would have had if the property had been claimed by some one who had no connection with the corporation. In our opinion the court had no jurisdiction to compel a discovery, or to order the property delivered to the assignee without his right to it having been first determined in a court of competent jurisdiction. It should first have directed the assignee to proceed in the proper forum to have the disputed question of ownership adjudicated. Our conclusions we believe are sustained by Davis v. Chicago Dock Co., *supra;* Ide v. Sayer, 129 Ill. 230; Friedman v. Podolski, 185 Ill. 587; Oakford & Fahnestock v. Fischer, 75 Ill. App. 544.

It is insisted by plaintiff in error that the National Bankruptcy Act suspended the Illinois Voluntary Assignment Act and that therefore the assignment was void and the court for that reason without jurisdiction. This position we think untenable. The Bankrupcy Act confers the right on any person who owes debts, *except a corporation,* to become

a voluntary bankrupt. It also provides that "any corporation engaged principally in manufacturing, trading, printing, publishing, mining or mercantile pursuits" owing more than one thousand dollars may be adjudged an involuntary bankrupt.

The Northern Illinois Normal School and Dixon Business College was a corporation and was therefore not entitled to the benefits of the act as a voluntary bankrupt. It was not engaged in any of the lines mentioned in the act which authorized its being adjudged an involuntary bankrupt.

In Ogden v. Saunders, 12 Wheat. 213, it was held that the power of Congress to establish uniform laws on the subject of bankruptcies throughout the United States is not exclusive, and state laws on that subject are valid where they do not conflict with the acts of Congress relating thereto.

"The enactment of a bankruptcy law by Congress suspends the operation of all state laws on the same subject, from the time it takes effect, as far as cases within the purview of the federal statute are concerned, and subject to such limitations as may be prescribed." 16 Am. & Eng. Ency. of Law, 642.

It seems to have been pretty generally held by all courts that only when the Bankruptcy Act conflicts with state insolvent debtor laws, are the latter superseded by the former. Griswold v. Pratt, 9 Metc. 16; Pugh v. Bissell, 2 Blackf. 394; Keystone Driller Co. v. Superior Court, 138 Cal. 738. The latter case was decided in 1903, and it was there held that the federal bankruptcy law exempts from its provisions a corporation seeking the benefit of the act as a voluntary bankrupt, and does not suspend the state insolvency law in that respect. After citing and quoting from the opinion of Chief Justice Marshall in Sturgis v. Crowninshield, 4 Wheat. 122, the court say: "If the bankruptcy act excepts a class of cases from its operation, either in express terms or by necessary implication, it must be considered that it was the intention of Congress not to interfere in that class of cases with the laws of the several

states in reference thereto. The state laws will remain operative in all cases which are not within the provisions of the bankruptcy act."

The case of Harbaugh v. Costello, 184 Ill. 110, 83 Ill. App. 29, is not in conflict with these decisions. In that case the insolvent was an individual and could have availed himself of the provisions of the law to be adjudged a voluntary bankrupt. He was included in the class to which the general bankrupt act was applicable, but we have seen that the Northern Illinois Normal School and Dixon Business College was not.

We conclude therefore, that the assignment was not void, but for the reasons stated herein the judgment of the court is reversed.

*Reversed.*